Tyler B. Ayres, Bar No. 9200
Daniel Baczynski  Bar No. 15530
AYRES LAW FIRM
12339 S. 800 E. Ste. 101
Draper UT 84020
(801) 255-5555
tyler@ayreslawfirm.com
daniel.ayreslaw@gmail.com
Attorneys for Plaintiff

## IN THE UNITED STATES DISTRICT COURT
## IN AND FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| REX LININ,<br><br>     Plaintiff,<br><br>vs.<br><br>TROOPER CHAMBERLIN NEFF, in his official and individual capacities, and THE UTAH HIGHWAY PATROL,<br><br>     Defendants. | **PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>Case No:  2:15cv00298<br><br>Magistrate Judge: Paul M. Warner<br>Judge Jill N. Parrish |

Plaintiff Rex Linin, by and through counsel, Tyler Ayres and Daniel Baczynski, Ayres Law Firm, respectfully submits this Memorandum in Opposition to Defendant's Motion for Summary Judgment.

i

**TABLE OF CONTENTS**

INTRODUCTION…………………………………………………………………………………..v

BACKGROUND………………………………………………………………………………….vii

RESPONSE TO STATEMENT OF ELEMENTS AND UNDIPSUTED MATERIAL FACTS…viii

    Qualified Immunity………………………………………………………………………viii

    False Arrest Under Section 1983………………………………………………………….x

    Unlawful Vehicle Impound Under Section 1983…………………………………………xiii

    Unlawful Inventory Search Under Section 1983…………………………………………xiv

    Official Capacity Claims Against Neff……………………………………………………xv

STATEMENT OF ADDITIONAL MATERIAL FACT…………………………………………..xv

SUMMARY JUDGMENT STANDARD……………………………………………………….....1

ARGUMENT…………………………………………………………………………………….2

    I.    Neff is not entitled to qualified immunity on the false arrest claim…………………2

        a.  Neff was not justified in expanding the scope of traffic stop……………………2

        b.  Neff lacked probable cause to effectuate Linin's arrest…………………………5

            i.  Refusal of DUI testing is distinguishable from requesting
               an alternative chemical test…………………………………………………..7

            ii.  Neff violated a clearly established constitutional right………………...11

    II.   Neff is not entitled to qualified immunity for impounding Linin's vehicle………..14

    III.  Neff is not entitled to qualified immunity for searching Linin's vehicle…………..15

CONCLUSION…………………………………………………………………………………17

## TABLE OF AUTHORITIES

| Cases | Page |
|---|---|
| *Archer v. Sanchez*, 933 F.2d 1526 (10th Cir. 1991) | 1, |
| *Archuleta v. Wagner*, 523 F.3d 1278 (10th Cir. 2008) | 16, |
| *Atwater v. Lago Vista*, 532 U.S. 318 (2001) | X, |
| *Beck v. Ohio*, 85 S. Ct. 223 (1964) | 6, |
| *Bradley v. Reno*, 632 F. App'x 807 (6th Cir. 2015) | 7,12, |
| *Colorado v. Bertine*, 479 U.S. 367 (1987) | XIV, |
| *Farmer v. Perrill*, 288 F.3d 1254 (10th Cir. 2002) | 1, |
| *Florida v. Wells*, 110 S. Ct. 1632 (1990) | 15,17, |
| *Gross v. Pirtle*, 245 F.3d 1151 (10th Cir. 2001) | 1, |
| *Hafer v. Melo*, 502 U.S. 21 (1991) | XV, |
| *Harbor Tug & Barge Co. v. Papai*, 117 S. Ct. 1535 (1997) | 11, |
| *Holland v. Harrington*, 268 F.3d 1179 (10th Cir. 2001) | 1, |
| *Johnson v. Lindon City Corp.*, 405 F.3d 1065 (10th Cir. 2005) | 7, |
| *Kaufman v. Higgs*, 697 F.3d 1297 (10th Cir. 2012) | 11, |
| *Kentucky v.Graham*, 473 U.S. 159 (1985) | XV, |
| *Koch v. City of Del City*, 660 F.3d 1228 (10th Cir. 2011) | 12, |
| *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 106 S. Ct. 1348 (1986) | 6,7, |
| *McDermott Int'l, Inc. v. Wilander*, 111 S. Ct. 807 (1991) | 11, |
| *Miller v. Harget*, 458 F.3d 1251 (11th Cir. 2006) | X, |

| | |
|---|---|
| *Monell v. New Yourk City Dept. of Social Services*, 436 U.S. 658 (1978) | XV, |
| *Ornelas v. United States*, 116 S. Ct. 1657 (1996) | 6,7, |
| *Pearson v. Callahan*, 129 S.Ct. 808 (2009) | VIII, |
| *Saucier v. Katz*, 121 S. Ct. 2151 (2001) | 1, |
| *South Dakota v. Opperman*, 96 S. Ct. 3092 (1976) | 17, |
| *State v. Rose*, 86 S.W.3d 90 (Mo. Ct. App. 2002) | 7,12, |
| *Summer v. Utah*, 927 F.2d 1165 (10th Cir. 1991) | 10, |
| *Swanson v. Fields*, 1993 WL 537708,4 (10th Cir. Dec 20, 1993) | 10, |
| *Tolan v. Cotton*, 134 S. Ct. 1861 (2014) | 12, |
| *U.S. v. Cervine*, 169 F. Supp. 2d 1204 (D. Kan. 2001) | 3, |
| *U.S. v. Guzman*, 864 F.2d 1512 (10th Cir. 1988) | 2, |
| *U.S. v. Haro-Salcedo*, 107 F.3d 769 (10th Cir. 1977) | XII, 14-7, |
| *U.S. v. Horn*, 185 F. Supp. 2d 530 (D. Md. 2002) | 7,12, |
| *U.S. v. Hunnicut*, 135 F.3d 1345 (10th Cir. 1998) | XIII, |
| *U.S. v. Johnson*, 994 F.2d 740 (10th Cir. 1993) | 17, |
| *U.S. v. Lugo*, 978 F.2d 631 (10th Cir. 1992) | 17, |
| *U.S. v. McSwain*, 29 F.3d 558 (10th Cir. 1994) | 5, |
| *U.S. v. Millan-Diaz*, 975 F.2d 720 (10th Cir. 1992) | 5, |
| *U.S. v. Nguyen*, 2008 U.S. Dist. LEXIS 57088 (E.D. Cal. Feb. 25, 2008) | 7,12, |
| *U.S. v. Pappas*, 735 F.2d 1232 (10th Cir. 1984) | 14, |
| *U.S. v. Rice*, 483 F.3d 1079 (10th Cir. 2007) | 3, |

| | |
|---|---|
| *U.S. v. Soto*, 988 F.2d 1548 (10th Cir. 1993) | 4-5, |
| *U.S. v. Tueller*, 349, F.3d 1239 (2003) | XIV,15, |
| *U.S. v. Villa-Chaparro*, 115 F.3d 797 (10th Cir. 1997) | 3, |
| *U.S. v. Wilson*, 96 F. App'x 640 (10th Cir. 2004) | 4-5, |
| *Whren v. United States*, 116 S. Ct. 1769 (1996) | 3, |
| *Wilder v. Turner*, 490 F.3d 810 (10th Cir. 2007) | X,2,6,10, |
| **Statutes** | -------- |
| Utah Code Ann § 41-6a-502 | V,14, |
| Utah Code Ann § 41-6a-527 | IX, 14, |
| Utah Code Ann. § 41-6a-904 | IX, 2, |
| Utah Code Ann. § 41-6A-1635 | IX, |

## INTRODUCTION

On December 16th, 2014, Defendant Chamberlin Neff (Neff), a sergeant with the Utah Highway Patrol (UHP), was patrolling I-80 around Tooele, County. Neff was under pressure from his lieutenant to stop and cite more drivers for violating Utah Code § 41-6a-502: Driving under the Influence of Alcohol. While driving on I-80 (a two-lane interstate), Neff identified a vehicle with an out-of-state license plate. The vehicle was driven by Linin, who noticed the officer and slowed down to allow him to pass. Neff knew that an emergency vehicle was stationed a few miles down I-80 and chose not to pass Linin. Neff moved into the left lane, and when Linin failed to yield the right lane, Neff stopped Linin for a traffic violation.

Neff invited Linin into his vehicle to allow a canine unit to perform a dog sniff around Linin's vehicle and to verify Linin's license and registration. In the meantime, Neff engaged Linin in a conversation about Linin's prior life as a farmer and his current family struggles. Linin's speech and walking pattern did not indicate impairment. When the registration came back valid and the traffic stop had reached its natural conclusion, Neff continued to ask Linin questions in an effort to manufacture evidence of a crime. Finally, Neff concluded that he detected the odor of alcohol on Linin's person and, despite no reasonable suspicion of consumption or impairment, required Linin to perform Field Sobriety Tests (FSTs).

Neff's administration of the FSTs was erroneous. Neff administered the Horizontal Nystagmus test so quickly that the results are de facto considered invalid by the National Highway Traffic Safety Administration (NHTSA). Linin told Neff that he suffered from a leg injury, which should have disqualified Linin from the Walk and Turn and One Leg Stand tests. Instead, Neff poorly demonstrated the tests then required Linin to perform the Walk and Turn test and One Leg Turn test despite the leg injury. Further exacerbating the Neff's errors, Neff did not consider Linin's leg injury or age when evaluating Linin's performance on the tests. Though Neff improperly administered the FSTs, Neff concluded Linin had "failed" the tests.

After conducting the SFSTs, Neff requested Linin blow into a portable breathalyzer (PBT). Linin had been warned about accuracy issues with the PBT by his ex-wife (an attorney) and requested a blood test be performed instead. Neff did not have probable cause that Linin was impaired or that Linin had even consumed alcohol, but Neff still arrested Linin then proceeded to search Linin's vehicle with several other officers.

Under the guise of an inventory search, Neff rummaged through Linin's vehicle in search of illegal contraband while Linin remained in Neff's vehicle. Jokingly, Neff commented that maybe administration may now get off his back about getting a DUI. Neff did not concern himself with obtaining a timely blood sample from Linin until after the vehicle had been searched and found clean, at which point Linin drove Neff to UHP's office in Tooele for a blood draw.

Officer Gillis attempted to draw blood three times from Linin's arm but was unable to draw blood. Instead of seeking alternative blood draw spots, driving Linin to a medical facility to employ better trained staff, or even requesting an Intoxilyzer 5000 breath sample, Neff decided he did not need any further evidence. With even less evidence of impairment (Linin had allowed for a blood test, thereby eliminating any motive to conceal evidence) Neff booked Linin into jail; whereat Linin was given a breath test which confirmed a BAC of .00. Linin was charged criminally for DUI, failing to yield, and a cracked windshield. Linin was forced to obtain counsel, though the State ultimately dismissed the charges and took no cation against Linin's license.

## BACKGROUND

1. On December 16th, 2014, Linin and Neff were both traveling westbound on Interstate I-80 near Tooele, Utah.

2. Officer Neff had been following Linin for several miles prior to initiating a traffic stop and observed Linin driving safely.

3. Neff stopped Linin for failure to yield to an emergency vehicle.

4. Neff approached Linin's vehicle from the passenger side, spoke with Linin about the reason behind the stop, and invited Linin into Neff's vehicle while Neff verified his license and registration.

5. Neither Linin's speech nor walk indicated Linin was impaired.

6. After Linin's license and registration were verified, Neff required Linin to perform field sobriety tests with no basis to suspect Linin was impaired.

7. Neff improperly administered field sobriety tests.

8. Following the field sobriety tests, Neff requested a chemical test from Linin and Linin expresses his preference for a blood test rather than a breath test.

9. Neff arrested Linin for DUI without any indication that Linin was impaired.

10. Neff and other officers searched Linin's vehicle while Linin remained in Neff's vehicle.

11. Officer Gillis attempted to draw blood from Linin's hands but failed to obtain blood.

12. Neff had multiple alternatives for obtaining a BAC from Linin.

13. Neff did not further attempt to obtain Linin's BAC.

14. Neff booked Linin in Tooele County Jail for DUI without a BAC or probable cause.

## RESPONSE TO STATEMENT OF ELEMENTS AND UNDISPUTED MATERIAL FACTS

**Qualified Immunity:** The legal elements required to prevail on a qualified immunity defense against Linin's claims are: (1) that the facts alleged do not make out violations of the constitutional rights allegedly violated; or (2) that a reasonable official would not have known they were violating such a constitutional right. *Pearson v. Callahan*, 129 S.Ct. 808, 816 (2009).

**RESPONSE:** Plaintiff agrees with both elements of qualified immunity.

1. Linin violated Utah Code Ann. § 41-6a-904(2) by failing to slow and yield the right travel lane to a stationary emergency vehicle displaying lights.

**RESPONSE:** Plaintiff disputes this material fact. Linin was charged with violating Utah Code Ann. § 41-6a-904(2) but this charge was dismissed by the State. Furthermore, Linin slowed his vehicle down and moved to the left side of the right lane as he passed the emergency vehicle. Linin did not change lanes because it was not practical to do so, an exemption recognized by Utah Code Ann. § 41-6a-904(2). (Exhibit 1, Docket Case No. 145007555; Exhibit 2, Linin Deposition @ p. 84).

2. Neff also observed that Linin's vehicle had a cracked windshield in violation of Utah Code Ann. § 41-6A-1635.

**RESPONSE:** Plaintiff disputes this material fact. Linin was charged with violating Utah Code Ann. § 41- 6A-1635 but this charge was dismissed by the State. (Exhibit 1) Furthermore, Neff did not observe that Linin had a cracked windshield until after Neff had initiated a traffic stop. (Exhibit 3, Neff Deposition @ p.11).

3. Upon contacting Linin, Neff detected the odor of alcohol on Linin's person and observed that Linin's eyes were watery and glossy.

**RESPONSE:** Plaintiff disputes this material fact. There was no odor of alcohol on Linin's person, nor were Linin's eyes watery and glossy. Furthermore, upon contacting Linin, Neff detected the odor of alcohol within Linin's vehicle not on Linin's person. It is only after Neff invited Linin into his vehicle did Neff allege to smell the odor of alcohol on Linin's person. (Exhibit 5, Video @ 15:02[1]).

4. Linin failed the FSTs.

**RESPONSE:** Plaintiff disputes this material fact. Field Sobriety Tests (FSTs) are not pass or fail tests. FSTs provide an officer with the opportunity to observe clues regarding a suspect's potential impairment. FSTs only provide reliable information as to impairment if properly administered. Neff failed to properly conduct the Horizontal Gaze Nystagmus test and Linin, due to his bad leg, was ineligible to perform the Nine Step Walk and Turn test and the One Leg Stance test. (Exhibit 4, Affidavit of Travis Jones, ¶¶ 25, 30-31, 34).

5. Linin refused the PBT stating that he had been told not to blow into a portable breathalyzer.

**RESPONSE:** Plaintiff disputes this fact. Linin requested a blood test in lieu of a portable breathalyzer. (See #6 and response below).

---

[1] Video references the Dash Cam Video included as Exhibit 2 in Defendant's Motion for Summary Judgment.

6. Linin requested a blood test instead.

**RESPONSE:** Plaintiff does not dispute this fact.

7. Neff arrested Linin for DUI.

**RESPONSE:** Plaintiff does not dispute this fact.

8. After arresting Linin for DUI, Neff impounded Linin's vehicle.

**RESPONSE:** Plaintiff does not dispute this fact.

9. Neff inventoried the impounded vehicle.

**RESPONSE:** Plaintiff contests this fact. Neff searched Linin's vehicle with the purpose of searching for contraband.

**FALSE ARREST UNDER SECTION 1983.** When a warrantless arrest is the subject of a § 1983 action, the defendant is entitled to qualified immunity if probable cause existed to arrest the plaintiff. *Wilder v. Turner*, 490 F.3d 810, 813 (10th Cir. 2007); *See e.g. Atwater v. Lago Vista*, 532 U.S. 318, 322 (2001) ("[i]f an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender."). An officer has probable cause to arrest an individual on suspicion of DUI where the officer observes the individual driving, smells alcohol emanating from the vehicle's interior and the individual refuses to take a breathalyzer. *Wilder*, 490 F.3d at 813 (citing *Miller v. Harget*, 458 F.3d 1251 (11th Cir. 2006)).

**RESPONSE:** Plaintiff does not dispute the elements of qualified immunity as it applies to claims of false arrest. Defendant is entitled to qualified immunity if probable cause existed to arrest the plaintiff. Plaintiff disputes Defendant's representation of *Wilder*, *Atwater*, and *Miller* as to probable cause, but argument on this matter is reserved for the Argument section.

10. Neff informed Linin that he smelled alcohol on his person.

**RESPONSE:** Plaintiff does not dispute this fact.

11. Neff asked Linin to come to the front of the UHP patrol vehicle to perform a series of field sobriety tests.

**RESPONSE:** Plaintiff does not dispute this fact.

12. Linin was then administered the Nystagmus Horizontal Gaze (HGN) test where he was asked to follow Neff's finger movements using only his eyes and not his head.

**RESPONSE:** Plaintiff does not dispute the fact that Officer Neff attempted to administer the Nystagmus Horizontal Faze (HGN) test on Linin. Plaintiff does dispute that Neff properly conducted the HGN test. Neff conducted the HGN test too quickly, Neff did not perform the necessary number of passes of the stimuli, and Neff did not hold the stimuli in place long enough to properly establish nystagmus. (Exhibit 4 ¶¶ 11-25).

13. As Neff began to administer the test, it became obvious that Linin was having difficulty maintaining his balance, and Neff invited him to lean against the push bumper of the UHP vehicle.

**RESPONSE:** Plaintiff disputes this material fact. There is no indication that Linin was having difficulty maintain his balance. Linin was shaken up from his experience with Officer Neff. (Exhibit 2 @ p 46). While Neff was administering the HGN, Neff inquired as to whether Linin was okay and Linin responded that he was shaken up. Neff then invited Linin to sit on the bumper of the UHP vehicle. (*Id* @ pp.43-47).

14. Neff observed that Linin's pupils were of equal size with no resting nystagmus, but Linin exhibited 6 total clues of impairment including a "lack of smooth pursuit", "nystagmus at maximum deviation", and "nystagmus prior to an onset of 45 degrees".

**RESPONSE:** Plaintiff disputes this material fact. Neff did not properly conduct the HGN, therefore Neff could not have taken notice of any clues of impairment during his administration of the HGN. The National Highway Traffic Safety Administration requires 14 passes with the stimulus before the suspect's eyes, with the duration of the test lasting no less than 82 seconds. Neff's administration of the HGN consisted of 10 passes with a duration lasting, at most, 73 seconds. The NHTSA states any HGN test that takes less than 82 seconds to administer was improperly administered, therefore Neff's HGN test was improperly administered. (Exhibit 4, ¶¶ 13-15, 25).

In order to accurately observe onset angle of nystagmus, the stimulus must be held in place for two seconds. When officer Neff conducted the onset angle of nystagmus passes, Neff did not hold the stimulus in place for two seconds. By not holding the stimulus in place for two seconds, Neff could not have accurately confirmed the onset angle of nystagmus. (Id., ¶ 21).

15. Linin also visibly moved his head while attempting to perform the HGN test.

**RESPONSE:** Plaintiff does not contest this fact.

16. Linin was then administered the Nine Step Walk and Turn test where he was instructed to stand with his right foot directly in front of his left foot with his arms down by his side and take nine steps, heel-to-toe, turn, and return by taking nine steps, heel-to-toe.

**RESPONSE:** Plaintiff does not contest that Neff attempted to administer the Nine Step Walk and Turn Test.

17. Neff recognized 7 out of 8 clues of impairment including Linin's inability to stand to the instructed position, he began the test early, confused his left and right foot, he put his hands at the small of his back, stepped off the line several times, missed heel-to-toe several times, performed an improper turn, and drifted to the left.

**RESPONSE:** Plaintiff contests this material fact. Linin informed Neff that he had a leg injury prior to attempting the Nine Step Walk and Turn Test. (Exhibit 3@ p.41). An individual with a leg injury is not eligible to perform the Nine Step Walk and Turn Test, therefore Neff could not have observed any clues of impairment. Furthermore, Neff did not consider Linin's leg injury and age in evaluating Linin's performance on the Walk and Turn Test. (Exhibit 4, ¶¶ 27-28).

18. Linin admits that he failed the Nine Step Walk and Turn test.

**RESPONSE:** Plaintiff does not dispute that Linin has stated he failed the Nine Step Walk and Turn test. However, Linin is not an expert on Field Sobriety Tests and does not have knowledge as to which individuals are eligible to perform the Nine Step Walk and Turn test. Furthermore, Field Sobriety Tests are not pass or fail, and to claim to have failed a FST is not an accurate assessment of one's performance on a FST. (Id., ¶ 31).

19. After the Nine Step Walk and Turn test, Linin had to sit down on the bumper of Neff's UHP patrol vehicle.

**RESPONSE:** Plaintiff contests this material fact. Neff invited Linin to sit down on the bumper of Neff's UHP patrol vehicle after Linin finished the Nine Step Walk and Turn test. Linin never requested or indicated a need to sit down. (Exhibit 3 @ p. 43).

20. Linin then attempted the One Leg Stand (OLS) test where Neff instructed Linin to stand on one leg with his arms down by his sides as he lifted the opposite foot six inches off the ground and counted while looking at his raised toes.

**RESPONSE:** Plaintiff does not contest this this material fact.

21. Neff observed that Linin continued to be shaky, raised his hands, hopped and swayed, was unable to get past a four or five second count without putting his foot down, and eventually switched legs

but still displayed 4 out of 4 clues of impairment. Furthermore, Neff failed to consider Linin's leg injury and age in evaluating Linin's performance on the One Leg Stand.

**RESPONSE:** Plaintiff contests this fact. Linin was not eligible to perform the One Leg Stand due to his disclosed leg injury. Neff could not have observed any clues of impairment because Linin was not eligible to perform the test. (Exhibit 4, ¶¶ 32-34).

22. Finally, Linin refused the PBT.

**RESPONSE:** Plaintiff contests this material fact. Linin requested a blood test in lieu of a PBT.

23. Linin stated that he had been told not to blow into a PBT, and he would like a blood test instead.

**RESPONSE:** Plaintiff does not contest this material fact.

24. Neff then arrested Linin for DUI.

**RESPONSE:** Plaintiff does not contest this material fact.

**Unlawful Vehicle Impound Under Section 1983.** Police may impound a vehicle without violating the Fourth Amendment when authorized to do so by state law. *U.S. v. Haro-Salcedo*, 107 F.3d 769, 771 (10 th Cir. 1977). Utah law permits the impoundment of a vehicle after an arrest for DUI. Utah Code Ann. § 41-6a- 527. Police may also impound vehicles without violating the Fourth Amendment if the vehicle impedes traffic or threatens public safety. Such impoundments are within the police officer's "community caretaking function." *U.S. v. Hunnicut*, 135 F.3d 1345, 1351 (10 th Cir. 1998) (1976).

**RESPONSE:** Plaintiff does not contest the elements of Unlawful Vehicle Impound under Section 1983.

25. On December 16, 2014, after observing Linin violate Utah Code Ann. § 41-6a- 904(2), Neff initiated a traffic stop of Linin's vehicle on I-80 westbound just outside Tooele, Utah.

**RESPONSE:** Plaintiff disputes this material fact. Linin did not violate Utah Code Ann. § 41-6a-904(2) as evidenced by the State's dismissal of the charge. (Exhibit 1). It was not practical for Linin to change lanes considering Neff's erratic driving. (Exhibit 2 @ pp.82-84).

26. Linin was the driver and sole occupant of the vehicle.

**RESPONSE:** Plaintiff does not contest this material fact.

27. Neff arrested Linin for DUI because Neff detected the odor of alcohol on Linin's person and Linin failed the FSTs.

**RESPONSE:** Plaintiff does not contest that Neff justified Linin's arrest by alleging to have detected the odor of alcohol on Linin's person and claiming Linin failed the FSTs. Plaintiff contests that Linin had the odor of alcohol on his person and that the FSTs were properly administered. (Exhibit 4 @ p. 40; Exhibit 3 ¶ 25).

28. Following arrest, Neff impounded Linin's vehicle.

**RESPONSE:** Plaintiff does not contest this material fact.

29. Linin's vehicle was stopped on the shoulder of Interstate 80. Leaving it there would have presented an unreasonable risk to public safety and/or damage to the vehicle.

**RESPONSE:** Plaintiff contests that the location of Linin's vehicle presented an unreasonable risk to public safety and/or damage to the vehicle. (Video @ 14:55:34-40; 15:25 – 15:33).

**Unlawful Inventory Search Under Section 1983**. Inventory searches "are now a well-defined exception to the warrant requirement of the Fourth Amendment." *Colorado v. Bertine*, 479 U.S. 367, 371 (1987). Inventory searches are reasonable if they are (1) conducted according to standardized procedures; and (2) the policy or practice governing inventory searches is designed to produce an inventory. *U.S. v. Tueller*, 349, F.3d 1239, 1243 (2003).

**RESPONSE:** Plaintiff does not contest the elements of Unlawful Inventory Search under Section 1983.

29. Defendant conducted an inventory search of Linin's vehicle as required by Utah Department of Public Safety Policy 704- Vehicle Towing.

**RESPONSE:** Plaintiff contests this material fact. Neff searched Linin's vehicle with an intent to search for contraband in Linin's vehicle. (Exhibit 3 @ pp.53-84).

30. Neff recorded his inventory of Linin's vehicle on a standard UHP Vehicle Inventory Form.

**RESPONSE:** Plaintiff does not contest this material fact.

31. At the end of inventory, Neff placed a copy of the inventory form and Linin's keys in Linin's vehicle and stayed with the vehicle until the tow truck arrived.

**RESPONSE:** Plaintiff does not contest this material fact.

**Official Capacity Claims Against Neff.** Official capacity suits "'generally represent only another way of pleading an action against an entity of which an officer is an agent'" *Kentucky v. Graham*, 473 U.S. 159 (1985) (quoting *Monell v. New Yourk City Dept. of Social Services*, 436 U.S. 658, 690, n. 55 (1978)). Official capacity claims are therefore treated as suits against the state, and are barred by the Eleventh Amendment. *Hafer v. Melo*, 502 U.S. 21, 25 (1991).

**RESPONSE:** Plaintiff does not contest the elements of Official Capacity Claims.

32. Neff is employed by UHP, an agency of the State of Utah.

**RESPONSE:** Plaintiff does not contest this material fact.

33. At all times applicable to this action, Neff was acting under the authority of the State of Utah in his official capacity as an enforcement officer with UHP.

**RESPONSE:** Plaintiff does not contest this material fact.

## STATEMENT OF ADDITIONAL MATERIAL FACTS

1. Prior to the traffic stop on December 16th, 2014, Neff had been following Linin for several miles and driving adjacent to Linin, thereby keeping Linin in the right lane. (Exhibit 2 @ pp. 82-84).

2. Utah Highway Patrol provides an incentive for officers to get DUIs. (Exhibit 3 @ pp.17-18).

3. Officers that "get" the most DUIs are recognized within UHP. (Id. @ pp. 18 & 58).

4. Officers that "get" less DUIs receive negative attention from their supervising officers. (Id. @ p. 18).

5. At the time of the traffic stop, Neff's lieutenant was "on his back" about getting more DUIs. (Id. @ p.51).

6. Though Linin attempted to slow down and changed lanes to allow Neff an opportunity to pass him up, Neff continued to follow Linin. (Exhibit 2 @ pp. 82-84).

7. Linin and Neff were driving down I-80, which has a speed limit of 75 mph. (Ex 3 @ p. 7).

8. Linin was driving the in the right lane as he approached the emergency vehicle, and reduced his speed and moved to the left side of the lane as he passed the vehicle. (Ex 2 @ p. 84).

9. Neff was driving in the left lane at the time Linin passed the stationary emergency vehicle and was driving at a faster speed than Linin. (Video @ 14:54:50-14:55:20).

10. Linin did not change lanes because he was shook up by Neff's driving pattern. (Exhibit 2 @ p. 83).

11. After Neff initiated the traffic stop, Neff approached Linin's truck from the passenger side window. (Exhibit 3 @ pp. 30-31).

12. Linin's vehicle was parked on the shoulder of I-80 and the driver side door was a few feet away from the highway. (Video @ 14:55:34-40).

13. Though Neff alleges he detected the odor of alcohol coming from Linin's vehicle, Neff did not request that Linin exit the vehicle through the passenger side door. (Exhibit 3 @ pp. 31-33).

14. Though Neff alleges he detected the odor of alcohol coming from Linin's vehicle, Neff did not assist Linin in exiting his vehicle through the driver's side door, mere feet away from the highway. (Video @ 14:57:19-31).

15. After Neff invited Linin into his vehicle, an officer had a dog sniff around Neff's vehicle. (Exhibit 3 @ pp. 29 & 54).

16. While Linin was sitting in Neff's patrol car Neff confronted Linin about the odor of alcohol, to which Linin responded that had had not been drinking. (Exhibit 2 @ pp. 39-40).

17. As Neff was explaining the FST tests Linin would be performing, Linin indicated the sun was in his eyes. (Id. @ p. 42).

18. Neff repositioned Linin so that the sun would not be in his eyes. (Id.).

19. Neff explained the HGN test but did not ask Linin if he understood the instructions. (Video @ 15:07).

20. Linin indicated that the traffic stop had gotten him "shaken up". (Exhibit 2 @ pp. 43 & 47; Exhibit 3 @ pp. 35 & 43).

21. Neff attempted to conduct the HGN, doing one initial pass of the stimuli, then asked Linin if he was okay. (Video @ 15:05:15-30).

22. Linin indicated that he was shaken up and Neff invited Linin to sit down on the bumper of his vehicle. (Exhibit 2 @ pp. 43 & 47; Exhibit 3 @ pp. 35 & 43).

23. Linin's new position put the sun in Linin's eyes during his performance of the HGN. (Exhibit 2 @ p. 42).

24. The HGN consists of 4 phases (Pre-existing Condition Check, Smooth Pursuit, Maximum Deviation, Onset Angle of Nystagmus, and Vertical Nystagmus). (Exhibit 4, ¶ 12).

25. Each phase of the NGT consists of a set number of passes (moving the stimuli across each individual eye). (Id.)

26. Each pass has a specified time allotment. (Id.)

27. The typical HGN test should not take less than 90 seconds with a HGN test lasting less than 90 seconds considered suspect. (Id., ¶ 14).

28. An HGN test that last less than 82 seconds is considered improperly administered by the NHTSA. (Id.).

29. Neff attempted to perform the Equal Tracking phase of the NGT, conducting two passes of the stimuli across Linin's eyes. (Id., ¶ 18).

30. The Equal Tracking phase took Neff, at most, thirteen (13) seconds to complete. (Id.).

31. Neff stopped and recommenced the HGN at 15:05:57, performing the remaining three phases of the HGN. (Id., ¶ 17).

32. Neff performed the Smooth Pursuit phase of the HGN, conducting four passes (of a required four passes) of the stimuli across Linin's eyes. (Id., ¶ 19).

33. While performing the Maximum Deviation phase, Neff only held the stimuli for approximately three seconds rather than the required four seconds necessary to confirm nystagmus. (Id., ¶ 22).

34. While performing the Onset Angle of Nystagmus phase, Neff only held the stimuli for one second rather than the required two seconds necessary to confirm nystagmus. (Id., ¶ 20).

35. Neff finished conducting the remaining three phases of the HGN at 15:06:53, for a duration of fifty-six (56) seconds. (Id., ¶ 23).

36. The total duration of the HGN (Equal Tracking phase and the remaining three phases) was sixty-nine (69) seconds. (Id.).

37. The NHSTA warns that individuals with leg injuries may have difficulty with the Nine Step Walk and Turn test. (Id., ¶ 26).

38. Linin admitted he had a leg injury as Neff was explaining the Nine Step walk and Turn test. (Id., ¶ 27).

39. While explaining the Nine Step Walk and Turn test, other than to ask about the amount of steps Linin needs to take, Neff does not ask Linin if he understands the instructions for the test. (Id., ¶ 29).

40. Neff's explanation of the Nine Step Walk and Turn test was unclear and improperly executed in determining intoxication. (Id.).

41. Linin struggled with the Nine Step Walk and Turn test because of he was disabled and shaking so bad. (Exhibit 2, @ p. 45).

42. The NHSTA warns that individuals with leg injuries may have difficulty with the one leg stand. Exhibit 4, ¶ 26, 28, 34).

43. Linin struggled with the one leg stand because of his leg injury. (Exhibit 2 @ pp. 46-48).

44. Neff did not take into consideration Linin's leg injury or Linin's age when evaluating Linin's performance on the FSTs. (Exhibit 3 @ pp. 41-42).

45. Neff's purpose behind conducting the inventory search was to look for illegal contraband. (Id., pp. 53-54).

46. As Neff conducted the inventory search, Neff mentioned to the other officers that Admin may get off his back now that he got a DUI. (Id., p. 51).

47. Neff did not ask the other officers about getting a blood test done on Linin until after the search had been completed. (Video @ 15:21:28-31).

48. Neff took Linin to the UHP Tooele Office to conduct the blood test. (Exhibit 3 @ pp.48-49).

49. Trooper Todd Gillis attempted three times to obtain blood from Linin's arm. (Exhibit 5, Police Report).

50. No further attempts were made to draw blood from any of Linin's other areas. (Exhibit 3 @ pp. 48-49).

51. Following the failed blood draw, Neff did not attempt to obtain Linin's BAC through a breath test. (Id. @ p. 48).

52. Neff did not obtain evidence identifying Linin's BAC. (Id.).

53. Despite the lack of a BAC, Neff transported and booked Linin to Tooele County Jail for DUI. (Id. @ p. 49).

54. At Tooele County Jail, Neff took a breath test with a result of .00 BAC. (Exhibit 2 @ p 80).

55. Linin was charged with violations of §§ 41-6A-904(2)(A), 41-6A-502, 41-6A-1635 (respectfully, Failure to reduce speed when approaching emergency vehicle (move over), Driving under the influence of alcohol, and Obstructed Visibility – Broken Window). (Exhibit 1).

56. Linin hired an attorney to represent him on these charges.  (Id.)

57. The charges against Linin were dismissed by the state.  (Id.)

## SUMMARY JUDGMENT STANDARD

A court reviews summary judgment orders deciding qualified immunity different from other motions for summary judgment. *Holland v. Harrington*, 268 F.3d 1179, 1185 (10th Cir. 2001). "When a defendant raises the defense of qualified immunity on summary judgment, the burden shifts to the plaintiff to show that 1) the official violated a constitutional or statutory right; and 2) the constitutional or statutory rights was clearly established when the alleged violation occurred." *Farmer v. Perrill*, 288 F.3d 1254, 1259 (10th Cir. 2002). If a plaintiff cannot satisfy either of these two elements, the Court must grant the defendant qualified immunity. *Gross v. Pirtle*, 245 F.3d 1151, 1156 (10th Cir. 2001).

The court first examines whether the defendant, with all facts taken in the light most favorable to the plaintiff, violated a constitutional right. *Saucier v. Katz*, 533 U.S. 194, 201, 150 L. Ed. 2d 272, 121 S. Ct. 2151 (2001). The court then considers whether the constitutional right was clearly established. *Id.* If the plaintiff is able to demonstrate that the defense violated a clearly established constitutional right, the burden then shifts to the defendant to prove the defendant is till entitled to judgment as a matter of law and that no material facts are in dispute. *Gross*, 245 F.3d at 1156.

The defendant still bears the normal summary judgment burden of showing no material facts remain in dispute. *Farmer*, 288 F.3d at 1259. Summary judgment is properly dismissed where the record indicates an unresolved dispute of fact relevant to the immunity analysis. *Archer v. Sanchez*, 933 F.2d 1526, 1530 (10th Cir. 1991).

1

## ARGUMENT

I.    Officer Neff is not entitled to summary judgment based on qualified immunity as to the false arrest claim because there are material facts in dispute regarding whether Neff had probable cause to initiate a traffic stop, whether Neff was justified in expanding the scope of the search, and whether Neff had probable cause to arrest Linin.

Officer Neff is not entitled to summary judgment based on qualified immunity because there are a number of material facts in dispute regarding the traffic stop. A defendant is entitled to qualified immunity on an arrest if probable cause existed to arrest the plaintiff. *Wilder v. Turner*, 490 F.3d 810, 813 (10th Cir. 2007). Neff justified his arrest on the basis of the alleged odor of alcohol on Linin's person and Linin's "failure" of the FSTs. Whether Neff had probable cause to arrest Linin is a mixed question of fact and law, a question usually inappropriate for resolution through summary judgment, especially where the record contains outstanding questions of fact. This case has outstanding questions of fact regarding whether Neff had justification to expand the scope of the initial traffic stop and whether Neff had probable cause to arrest Linin for DUI. These issues of material fact, which speak directly to the issue of immunity and probable cause, prevent the resolution of this case through summary judgment.

A.  Neff did not have justification to expand the scope of the traffic stop to test for DUI.

Neff did not have the requisite justification to expand the scope of his investigation to include tests for DUI. Neff stopped Linin for violating §41-6a-904(2) for his failure to slow and yield the right lane of travel to a stationary emergency vehicle. A traffic stop is a temporary detention and investigation limited to issuing a citation and determining the validity of the driver's license. *United States v. Guzman*, 864 F.2d 1512, 1519 (10th Cir. 1988). The traffic stop's scope

may be expanded if an officer has an objective reasonable and articulable suspicion that illegal activity has occurred. *United States v. Rice*, 483 F.3d 1079, 1084 (10th Cir. 2007). Neff drafted a citation and validated Linin's license, but then expanded the scope of the investigation due to alleged odor of alcohol.[1] Neff did not have objectively reasonable and articulable suspicion that Linin had been DUI because none of Linin's prior conduct (safely driving his vehicle for several miles while observed by Neff, walking from his truck to the police vehicle, holding a conversation with Neff for five minutes) supported that suspicion that Linin was impaired. The totality of the circumstances did not support a reasonable suspicion of DUI, therefore Neff should never have expanded the scope of the traffic stop to include a DUI investigation.

Traffic stops are searches of limited scope. *Whren v. United States*, 517 U.S. 806, 809, 116 S. Ct. 1769, 1772 (1996). "Generally, an investigation detention must last no longer than is necessary to effectuate the purpose of the stop… Upon issuing a citation or warning and determining the validity of the driver's license and right to operate the vehicle, the officer usually must allow the driver to proceed without further delay." *United States v. Cervine*, 169 F. Supp. 2d 1204, 1207 (D. Kan. 2001). Instead of releasing Linin after his license had been validated, Neff continued to question Linin and required Linin to perform FSTs, ultimately resulting in Linin's arrest.[2] A longer investigation for additional questioning is permissible if an officer has a particularized and objective basis for suspecting the person of criminal activity. *Id*; *United States v. Villa-Chaparro*, 115 F.3d 797, 801 (10th Cir. 1997). Neff would need reasonable suspicion that

---

[1] Exhibit 2 @ 39-40.
[2] Video @ 15:02-03.

Linin was DUI in order to expand the scope of the traffic stop to include tests for alcohol impairment.

Neff's reasonable suspicion was based on the Neff allegedly detecting the odor of alcohol on Linin's person and Linin's watery and glassy eyes.[3] These material facts justifying Neff's expansion of the traffic stop's scope and are both contested; contested by Linin's testimony as well as the circumstances of Neff's expansion of the traffic stop. Neff claims to have detected the odor of alcohol and observed Linin's eyes upon contacting Linin, yet Neff does not conduct a DUI investigation, does not mention the odor of alcohol, and does not question Linin regarding drinking until Linin's license had been validated and the traffic stop was over.[4] No other officer supported Neff's suspicion of impairment, no other officer supported Neff's detection of alcohol odor, Linin explained he had not drank alcohol in days, and, despite Neff's claim of alcohol odor in the vehicle, no alcohol was discovered in the vehicle.[5] Neff's claims that he immediately detected signs of Linin's impairment, yet Neff waited until the end of the stop to even ask Linin whether he had been drinking; this despite the addition of new evidence (Linin's walk, Linin's conversation) which contradict Neff's initial perception of Linin. The circumstances of traffic stop contest Neff's alleged observations of impairment.

Even if the observations were true, Neff could not solely consider possible signs of alcohol consumption in forming reasonable suspicion to expand the traffic stop. "The determination of reasonable suspicion does not depend upon any one factor, but on the totality of the circumstances."

---

[3] Exhibit 3 @ p 11.
[4] *Id*; Video @ 15:02-03.
[5] Video

4

*United States v. Wilson*, 96 F. App'x 640, 646 (10th Cir. 2004) (citing *United States v. Soto*, 988 F.2d 1548, 1555 (10th Cir. 1993)). In addition to those "alleged" factors supporting consumption of alcohol, Neff was required to also consider the mitigating circumstances, including Linins' driving pattern prior to the stop (Linin had been driving with no signs of impairment; Linin's stop following Neff engaging the emergency lights on his vehicle (no sign of impairment); Neff's conversation with Linin in the police vehicle (no signs of impairment) and Linin's walk from his truck to the police vehicle (no signs of impairment). Even if Neff has reasonable suspicion at the onset of the traffic stop, circumstances that occurred during the stop served to dissipate Neff's reasonable suspicion. *See United States v. McSwain*, 29 F.3d 558, 561-62 (10th Cir. 1994); *Millan-Diaz*, 975 F.2d at 722. The totality of the traffic stop dispelled Neff's preconception that Linin was impaired, therefore Neff was not justified in expanding the scope of the traffic stop.

Since material facts in dispute are viewed in the light most favorable to the non-moving party, the Court must construe the facts in Linin's favor. For the purposes of this summary judgment motion, Linin did not have an odor of alcohol on his person and Linin did not have glassy and watery eyes. Without those factors supporting alcohol consumption, and considering the mitigating factors supporting Linin's non-impairment, Neff did not have a reasonable suspicion to expand the scope of the traffic stop.

B. Neff lacked probable cause to arrest Linin for DUI because the FST upon which Neff relied on were improperly conducted and therefore could not be considered evidence of impairment.

Linin is not entitled to qualified immunity because Linin did not have probable cause to arrest Linin for DUI. Neff claims to have arrested Linin on the basis that Linin had the odor of

5

alcohol on him, Linin's eyes were glassy and watery, that Linin failed the FSTs, and that Linin refused to take the PBT. Many of these factors are contested, including the glassy and watery eyes, the odor of alcohol, and finally, whether the FSTs were properly conducted. Contested facts are viewed in the light most favorable to the non-movant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 600, 106 S. Ct. 1348, 1363 (1986) Though Linin does not contest he refused the PBT, he did request as an alternative that the officer administer a blood test.[6] For the purposes of this summary judgment motion, the only evidence that supported Neff's suspicion of DUI was Linin's preference for a blood test over a PBT, in which Neff failed to obtain a chemical test result from Linin. The totality of the circumstances do not establish probable cause of DUI, therefore Neff is neither entitled to qualified immunity nor dismissal through summary judgment.

A defendant is entitled to qualified immunity for a warrantless arrest if probable cause existed to arrest the plaintiff. *Wilder v. Turner*, 490 F.3d 810,813 (10th Cir. 2007). The test for an arrest without probable cause is an objective one, based on the facts available to the officer at the time of arrest. *Beck v. Ohio*, 379 U.S. 89, 96, 13 L. Ed 2d 142, 85 S. Ct. 223 (1964). The probable cause analysis consist of two parts: (1) a determination of the facts leading up to the arrest; and (2) whether the facts amount to probable cause (a mixed question of law and fact). *Ornelas v. United States*, 517 U.S. 690, 696, 116 S. Ct. 1657, 1662 (1996).

---

[6] Video @ 15:12

i.  Determination of the facts establishing probable cause for the purpose of this summary judgment motion.

The first part of the probable cause analysis is a determination of the facts leading up to the arrest. *Id*. Neff arrested Linin based on the following factors: (1) Neff detected the odor of alcohol on Linin's person, (2) Neff observed Linin's eyes were glassy and watery (3) Linin "failed" the FSTs; and (4) Linin requested a blood test as an alternative to the PBT.[7] Linin disputes the material facts that Neff detected the odor of alcohol on his person and that Neff observed Linin's eyes were glassy and watery. Disputed facts are viewed in the light most favorable to the non-movant. *Matsushita Elec. Indus. Co.*, 106 S. Ct. at 1363. For the purposes of this summary judgment motion, the Court must conduct the probable cause analysis under the assumption that Linin did not detect the odor of alcohol on Linin's person and that Neff did not observe Linin's eyes were glassy and watery.

Linin also contests the validity of Neff's observations during the FSTs, claiming the FSTs were improperly administered. Probable cause is based on an officer's knowledge at the time of the arrest. *Johnson v. Lindon City Corp*., 405 F.3d 1065, 1068. The officer's knowledge can only satisfy probable cause of it is based on reasonably trustworthy information. *Id.* FST evidence is only a reasonably trustworthy indication of intoxication if the FSTs have been administered correctly. *See State v. Rose*, 86 S.W.3d 90, 97 (Mo. Ct. App. 2002); *United States v. Horn*, 185 F. Supp. 2d 530, 537 (D. Md. 2002); *Bradley v. Reno*, 632 F. App'x 807, 810 (6th Cir. 2015); *United States v. Nguyen*, No. CR F 06-0075 AWI, 2008 U.S. Dist. LEXIS 57088, at *33 (E.D. Cal. Feb. 25, 2008).

---

[7] Exhibit 5

An officer's observations during an improperly administered FST would not be reasonably trustworthy indications of intoxication and therefore could not be used to establish probable cause for an arrest.

   Linin conducted three field sobriety tests: Horizontal Gaze Nystagmus test; Nine Step Walk and Turn test; and the One Leg Stand test.[8] The Horizontal Gaze Nystagmus was improperly administered because Neff did not conduct the correct number of passes, did not hold his finger in place long enough during certain phases to properly identify nystagmus, did not perform the vertical nystagmus phase of the test, and overall conducted the test too quickly.[9] The duration of the test is sufficient, by itself, to render the test invalid.[10] These multiple errors resulted in an improperly administered HGN test, therefore any observations made by Neff during the test could not support probable cause of DUI.

   The Nine Step Walk and Turn and the One Leg Stand were also improperly administered, and Neff's observations during these Field Sobriety Tests also cannot support probable cause of DUI. Prior to conducting the Nine Step Walk and Turn test, Linin informed Neff that he had a "bad" leg.[11] Individuals with leg injuries are not candidates for preforming the Nine Step Walk and Turn test and One Leg Stand, but Neff had Linin perform the test all the same.[12] Neff did not properly demonstrate the test to Linin, setting Linin up for a poor performance on the test. [13] Finally, when

---

[8] Exhibit 5
[9] Video @ 15:04-15:11
[10] Exhibit 4, ¶ 23
[11] Exhibit 4, ¶ 27.
[12] *Id*, ¶ 26.
[13] *Id*, ¶ 29.

Neff was observing Linin perform the tests, Neff did not consider Linin's leg injury or age in searching for signs of impairment.[14] The Nine Step Walk and Turn test and the One Leg Stand test were not properly administered due to these errors.

Neff's probable cause, for the purposes of this summary judgment motion, is based solely on Linin's request to take a blood test instead of the portable breath test. Refusal to participate in a DUI test can be considered an attempt to conceal evidence, but Linin provided permission for the officers to take his blood. Once Neff was able to administer the blood test on Linin, there was no longer the suspicion that Linin was attempting to conceal incriminating evidence. Neff failed to obtain evidence of Linin's BAC after only a token attempt to conduct chemical test on Linin.[15] At this point, with no physical factors (for the purposes of summary judgment) indicating Linin had been intoxicated, no field sobriety test evidence indicating Linin was impaired, no chemical test indicating alcohol consumption, and a suspect willing to provide a blood sample, Neff lacked probable cause of DUI and should have released Linin from custody. Instead, Neff booked Linin into jail thereby violating Linin's constitutional rights.

- Cases wherein suspects refused to participate in a DUI test are distinguishable from Linin's case because Linin allowed the officers to draw his blood, thereby removing any suspicion that Linin was attempting to conceal incriminating evidence.

Neff presents a number of cases wherein he claims refusal of a portable breath test was sufficient to establish probable cause. For the purposes of this summary judgment motion, Linin's probable cause was based solely on Linin's preference for a blood test over a breath test, and Neff

---

[14] Exhibit 3 @ pp 41-42.
[15] *Id* @ p 48.

presents no cases where a court has found requesting a blood alcohol test as an alternative to a breath test solely establishes probable cause for an arrest. Furthermore, Linin's case is distinguishable from cases wherein suspects refused to participate in a DUI investigation because Linin's willingness to provide a blood sample dispels any motivation by Linin to conceal incriminating evidence. Defendant provides no support for the conclusion that Linin's request for a blood test, wherein officers were unable and unwilling to obtain a BAC from Linin, can, by itself, create probable cause for an arrest.

While defendant cites to a number of cases involving suspects refusing DUI tests, all of these cases are distinguishable from the present facts for the purpose of summary judgment. (*Summer v. Utah*, 927 F.2d 1165 (10th Cir. 1991): operation of vehicle, odor of alcohol, and plaintiff's refusal to take FST; *Wilder v. Turner*, 490 F.3d 810 (10th Cir. 2007): odor of alcohol, pinkish and watery eyes, flushed face, unusually slow and deliberate speech, and refusal to participate in field sobriety test; *Swanson v. Fields*, case no. 93-3038, 1993 WL 537708,4 (10th Cir. Dec 20, 1993): unusual driving, wobbling, swaying, confused speech, bloodshot eyes, and admitted to consuming alcohol). In none of the cases presented by the Defendant did a court find probable cause based solely on the suspect's preference for an alternative BAC test.

Though these cases does includes a refusal to participate in a test, refusal is distinguishable from a request for alternative testing. Refusal to submit to a test is indicative of an intent to conceal evidence of guilt. *Wilder v. Turner*, 490 F.3d 810, 814-815 (10th Cir. 2007). There is no indication Linin intended to conceal evidence. By offering to provide a blood test, Linin cannot be considered to be hiding evidence. Linin's lack of malicious intent is further evidenced by the fact that Linin

allowed a blood test to be conducted, and was even poked three times during the failed attempt.[16] With no evidence that Linin sought to conceal his guilt, Linin's request for alternative testing cannot be considered evidence supporting probable cause of DUI, or at the very least, requesting alternative testing should be considered distinguishable from those cases where suspects refused to comply with a police investigation.

In order to be eligible for qualified immunity on an arrest, the officer must have had probable cause to initiate the arrest. Whether an officer had probable cause is a mixed question of law and fact, and mixed questions are often inappropriate to resolve through summary judgment. *Harbor Tug & Barge Co. v. Papai*, 520 U.S. 548, 554, 117 S. Ct. 1535, 1540 (1997). "Summary judgment on a mixed question of fact and law is acceptable where the facts and law will reasonably support one conclusion." *Id*, (citing *McDermott Int'l, Inc. v. Wilander*, 498 U.S. 337, 356, 111 S. Ct. 807, 818 (1991)). The facts which are not in dispute (that Linin requested a blood test instead of a PBT) do not reasonably support the conclusion that Neff had probable cause to arrest

      ii.     <u>Arresting an individual for DUI based solely on his request for an alternative chemical test is a violation of the clearly established Fourth Amendment right to freedom from arrest without probable cause.</u>

The second phase of the qualified immunity argument is whether the constitutional right alleged to be violated was clearly established at the time of the incident. "In the context of a false arrest claim, an arrestee's constitutional rights were violated if the arresting officer acted in the absence of probable cause." *Kaufman v. Higgs*, 697 F.3d 1297, 1300 (10th Cir. 2012). The Plaintiff

---

[16] Exhibit 3 @ pp 48-49, Exhibit 5.

must show "it would have been clear to a reasonable officer that probable cause was lacking under the circumstances." *Koch v. City of Del City*, 660 F.3d 1228, 1241 (10th Cir. 2011). The question on summary judgment is whether the circumstances, viewed in the light most favorable to the non-movant, would have made it clear that a reasonable officer lacked probable cause. *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014). ("Our qualified-immunity cases illustrate the importance of drawing inferences in favor of the non-movant, even when, as here, a court decides only the clearly-established prong of the standard"). Neff arrested and jailed Linin with no evidence of impairment other than Linin's request for an alternative chemical test. Once Linin had the blood test performed on him, there no longer existed any question a possible motivation to conceal evidence. Under these circumstances, with no evidence of impairment, a reasonable officer would have concluded probable cause was lacking under the circumstances.[17]

For the purposes of qualified immunity, a plaintiff does not require a case on point to clearly establish a constitutional right. Overwhelming case law establishes that a FST that was not properly administered is not evidence in support of impairment. *See State v. Rose*, 86 S.W.3d 90, 97 (Mo. Ct. App. 2002); *United States v. Horn*, 185 F. Supp. 2d 530, 537 (D. Md. 2002); *Bradley v. Reno*, 632 F. App'x 807, 810 (6th Cir. 2015); *United States v. Nguyen*, No. CR F 06-0075 AWI, 2008 U.S. Dist. LEXIS 57088, at *33 (E.D. Cal. Feb. 25, 2008). It would have been clear to a reasonable officer that if the FTSs are not properly administered, results from the FSTs are not reliable and cannot be used as evidence to form probable cause.

---

[17] Exhibit 4, ¶ 38.

Without the FSTs as evidence, and all other physical factors supporting alcohol consumption observed by Neff in dispute, Neff relied on Linin's request for a blood test instead of a breath test as the basis for Linin's arrest. Neff brought Linin into the office and attempted to take a blood test but failed to obtain a result.[18] No reasonable officer could have believed to have had probable cause for an arrest where there is no FST evidence, no physical signs of consumption, and the suspect requests a blood test but no result is obtained. No reasonable officer would have arrested Linin in the first place, and certainly no officer would have continued to hold Linin in custody after failing to perform a blood test, let alone then book him into jail.

While the current analysis of a reasonable officer has been limited to those factors in favor of probable cause, the reasonable officer would also have considered those mitigating factors which demonstrated Linin was not impaired. Neff had been following Linin for several miles and Neff had not detected a driving pattern indicating impairment.[19] Linin also walked to Neff's vehicle and carried a conversation with Linin with no signs of impairment.[20] The mitigating factors further support the obvious lack of probable cause.

Considering the totality of the circumstances, no reasonable officer would have believed to have had probable cause. The only evidence supporting DUI was Linin's request for a blood test rather than a breath test. Linin proceeded to freely provide blood to obtain his BAC, dismissing the possibility that Linin was acting to suppress incriminating evidence. With no BAC, no FSTs, and no physical indications of alcohol consumption, there is no evidence to support Linin's arrest.

---

[18] Exhibit 5.
[19] Exhibit 2 @ pp 82-84.
[20] Video @ 14:55-15:02.

Furthermore, there are mitigating factors, including Linin's driving pattern, Linin's speech pattern, and Linin's walk to Neff's vehicle which demonstrate Linin was not impaired. Under these circumstances, Linin had a clearly established right to be free from arrest due to lack of probable cause.

II.     Neff is not entitled to qualified immunity for impounding Linin's vehicle, despite authority to do so following an arrest, because Linin was arrested without probable cause in violation of his constitutional rights.

An officer may impound a vehicle without violating the owner's constitutional rights if the officer is acting pursuant to state law. *U.S. v. Harco-Salcedo*, 107 F.3d 769, 771 (10th Cir 1997). Utah Code Ann § 41-6a-527 allows an officer to impound a vehicle if the officer arrest, cites, or refers for administrative action the operator of a vehicle for violating § 41-6a-502. Neff violated Linin's constitutional rights by arresting Linin for DUI without probable cause. The subsequent impoundment therefore was not made pursuant to Utah Code Ann § 41-6a-527 because the arrest and citation were improper.

An impoundment that does not conform to a state law is a clear violation of an individual's constitutional rights. *United States v. Pappas*, 735 F.2d 1232, 1233 (10th Cir. 1984). In *Pappas*, the 10th Circuit Court found an individual's constitutional rights had been violated where an officer impounded a vehicle prior to the individual's arrest. State law only allowed a police officer to impound a vehicle after the individual had been arrested. There is a clearly established constitutional right protecting individuals from impoundments that do not abide by state law.

Neff is not entitled to qualified immunity on the impoundment claim because the facts establish that Neff violated Linin's constitutional rights and that the right was clearly established at

14

the time. Neff impounded Linin's vehicle following Linin's unconstitutional arrest. Case law clearly

establishes that impoundment that do not abide by state law are violations of the constitution. *United*

*States v. Pappas*, 735 F.2d 1232, 1233 (10th Cir. 1984). Utah Code Ann § 41-6a-527 allows for an

impoundment following a constitutional arrest or citation for DUI. Neff's failure to initiate a

constitutional arrest subsequently resulted in the unconstitutional impoundment of Linin's vehicle.

Neff therefore is not entitled to qualified immunity because he violated Linin's clearly established

rights with the impoundment of Linin's vehicle.

III.    Neff is not entitled to qualified immunity on the inventory search because the inventory
        search was conducted as a pretext for investigation.

Neff is not entitled to qualified immunity on Linin's claim for unconstitutional search of his

vehicle if Neff's search violated the Fourth Amendment and Linin's right was clearly established.

Inventory searches are not treated as searches for the purposes of the Fourth Amendment because

they are considered administrative. *Tueller*, 349 F.3d at 1243. Neff claims the search of Linin's

vehicle was an inventory search, therefore the search is not governed by the Fourth Amendment.

However, an inventory search "must not be a ruse for a general rummaging in order to discover

incriminating evidence, but rather an administrative procedure designed to produce an inventory."

*United States v. Haro-Salcedo*, 107 F.3d 769, 773 (10th Cir. 1997), citing *Florida v. Wells*, 495 U.S.

1, 4, 109 L. Ed. 2d 1, 110 S. Ct. 1632 (1990). An inventory search conducted in bad faith or for the

sole purpose of investigation violates the Fourth Amendment. *Id.* Neff conducted a search of Linin's

vehicle in bad faith and for the purpose of investigation, thereby violating the Fourth Amendment.

The circumstances surrounding Linin's arrest suggest Neff stopped, arrested, and searched Linin's vehicle on a suspicion that Linin may be carrying drugs. After initiating the stop, Neff invited Linin into his vehicle, at which point a dog sniff was conducted by another officer. After the dog sniff failed to indicate drugs, Neff announced he smelled alcohol on Linin's person and demanded that Linin conduct the FSTs.[21] After improperly administering the tests, Neff arrested Linin, thereby allowing the officers to search the vehicle in Linin's presence. Neff did not request a phlebotomist until the inventory search had been completed, indicating a greater desire to complete the search of Linin's vehicle rather than obtain a timely sample of Linin's BAC.[22] Finally, Neff admitted that his purpose for conducting the inventory search was to search for contraband.[23] Neff's investigatory purpose for searching the vehicle dismisses Neff's claim that it was an inventory search. Neff's investigation of Linin's vehicle was governed by the Fourth Amendment, and Neff's failure to obtain a warrant resulted in a violation of Linin's constitutional rights.

The right to freedom from inventory searches conducted in bad faith or for an investigatory purpose is clearly established by both U.S. Supreme Court and 10th Circuit case law. "A plaintiff can demonstrate that a constitutional right is clearly established by reference to cases from the Supreme Court, the 10th Circuit, or the weight of authority from other circuits." *Archuleta v. Wagner*, 523 F.3d 1278, 1283 (10th Cir. 2008). The U.S Supreme Court has mentioned in both

---

[21] Video @ 15:03
[22] Video @ 15:21
[23] Exhibit 3, ¶ 83-84.
   ("Q. Now, you did a full inventory search. Were you looking for drugs?
   A. (Neff) I was looking for contraband.
   Q. So just whatever was there.
   A. (Neff) Alcohol, drugs, anything that would be illegal.)

*Florida v. Wells* and *South Dakota v. Opperman* that bad faith or pretext violates the purpose of an inventory search. *South Dakota v. Opperman*, 428 U.S. 364, 96 S. Ct. 3092 (1976); *Florida v. Wells*, 495 U.S. 1, 110 S. Ct. 1632 (1990). The 10th Circuit also warned in *United States v. Haro-Salcedo*, *United States v. Johnson*, and *United States v. Lugo* that inventory searches conducted in bad faith, as pretext for investigation, or outside the scope of inventory violate the Fourth Amendment. *United States v. Haro-Salcedo*, 107 F.3d 769 (10th Cir. 1997); *United States v. Johnson*, 994 F.2d 740 (10th Cir. 1993); *United States v. Lugo*, 978 F.2d 631 (10th Cir. 1992).

An officer that conducts an inventory search in bad faith has violated the Fourth Amendment, a constitutional right clearly established by the Supreme Court and reiterated by the 10th Circuit. Neff is therefore not entitled to qualified immunity because his conduct violated a constitutional right and the constitutional right was clearly established. Without qualified immunity, Neff cannot prevail on summary judgment.

## CONCLUSION

There are simply too many questions of fact present in this case to allow for summary judgment. While Defendant is correct in identifying the majority of the event was caught on video, Neff relied upon factors which are not apparent in the video (odor of alcohol) in order to expand the scope of the original traffic stop and eventually effectuate Linin's arrest.

With the facts viewed most favorably to the non-movant, Neff relied upon no supporting factors to expand the scope of the original traffic stop to include a DUI investigation. With the facts viewed most favorably to the non-movant, Neff relied upon improperly administered FSTs and Linin's request for an alternative test to effect Linin's arrest. When Neff subsequently failed to

obtain Linin's BAC, instead of releasing Linin Neff booked Linin into jail solely on the basis of improperly administered FSTs. Neff lacked probable cause to effectuate the arrest, which is the basis for both the inventory search and the impoundment. Neff is not entitled to judgment on the basis of the undisputed facts; therefore Linin respectfully requests the Court deny Neff's motion for summary judgment.

Dated this 25th day of May, 2016

AYRES LAW FIRM

/s/ Daniel Baczynski
Daniel M. Baczynski
Attorney for Plaintiff

## CERTIFICATE OF SERVICE

I certify that on this 25th day of May 2016, I caused a true and correct copy of

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY

JUDGMENT to be filed with the Clerk of the Court using the CM/ECF system, which

sent notification of the filing to counsel of record, as follows:

Darin B. Goff
UTAH ATTORNEY GENERAL'S OFFICE
160 East 300 South, 6th Floor
Salt Lake City, UT  84114-0856


/s/      Cheyanne Searle