| | |
|---|---|
| REX LININ, an individual,<br><br>    Plaintiff,<br><br>v.<br><br>TROOPER CHAMBERLIN NEFF, in his official and individual capacities,<br><br>    Defendant. | **MEMORANDUM DECISION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>Case No. 2:15-cv-298-JNP-PMW<br><br>Judge Jill N. Parrish<br>Magistrate Judge Paul M. Warner |

Before the court is Defendant Trooper Chamberlin Neff's Motion for Summary Judgment (Docket 21). On July 21, 2016, the court held a hearing on Defendant's motion. The court then took the matter under advisement. After considering the parties' memoranda, the applicable law, and the undisputed material facts, the court GRANTS IN PART and DENIES IN PART Defendant's Motion for Summary Judgment.

## BACKGROUND

At approximately 3:00 p.m. on December 16, 2014, Mr. Linin was driving westbound on I-80 near Tooele, Utah. While driving in the right lane, Mr. Linin passed a parked law enforcement vehicle with flashing overhead emergency lights. Mr. Linin did not move into the left lane before passing the law enforcement vehicle even though he had an opportunity to do so. Trooper Neff, an enforcement officer with the Utah Highway Patrol ("UHP"), observed these events and initiated a traffic stop, pulling Mr. Linin over for violating Utah Code § 41-6A-904(2), which makes it illegal to fail to slow down and move into the left lane to yield the right lane to a stationary emergency vehicle displaying lights.

Upon approaching Mr. Linin's vehicle, Trooper Neff observed that Mr. Linin had a

cracked windshield in violation of Utah Code § 41-6A-1635. Trooper Neff then spoke with Mr. Linin about the reason for the stop, telling Mr. Linin that he had violated Utah law by failing to move into the left lane when he passed the stopped emergency vehicle and driving a vehicle with a cracked windshield. Other than these two violations, Trooper Neff did not observe any other traffic violations or anything else in Mr. Linin's driving pattern that would justify a stop.

Trooper Neff alleges that while he was speaking with Mr. Linin he detected the odor of alcohol coming from Mr. Linin's vehicle. But Trooper Neff made no mention of the issue at the time. Rather, Trooper Neff asked Mr. Linin to come with him to Trooper Neff's patrol vehicle.

Mr. Linin walked to Trooper Neff's patrol vehicle in a normal fashion and exhibited no signs of impairment. While Mr. Linin sat in Trooper Neff's patrol vehicle, Trooper Neff checked Mr. Linin's driver's license and registration and asked Mr. Linin a few questions. Mr. Linin's speech was not slurred, but Trooper Neff asserts that it was slow and deliberate. During this time, another officer had a dog sniff around Mr. Linin's vehicle. The dog did not discover anything out of the ordinary.

At the end of the traffic stop, Trooper Neff told Mr. Linin that he smelled alcohol coming from Mr. Linin and asked Mr. Linin if he had been drinking. Mr. Linin denied drinking. Trooper Neff also testified that he observed that Mr. Linin's eyes were watery and glassy, but Mr. Linin disputes this fact.

Trooper Neff then asked Mr. Linin to perform a series field sobriety tests. Trooper Neff first administered the Horizontal Gaze Nystagmus Test ("HGN test") on Mr. Linin. Mr. Linin visibly moved his head while attempting to perform the HGN test. Trooper Neff alleges that Mr. Linin exhibited six total clues of impairment, including a "lack of smooth pursuit," "nystagmus at maximum deviation," and "nystagmus prior to an onset of 45 degrees." But Mr. Linin presents

expert testimony that Trooper Neff improperly conducted the HGN test too quickly, did not perform the necessary number of passes of stimuli, and did not hold the stimuli in place long enough to establish nystagmus.

Trooper Neff then asked Mr. Linin to perform the nine-step walk and turn test. Prior to performing the nine-step walk and turn test, Mr. Linin informed Trooper Neff that he had a leg injury. Despite this, Trooper Neff still asked Mr. Linin to perform the nine-step walk and turn test. Trooper Neff alleges that Mr. Linin demonstrated seven clues of impairment, including Mr. Linin's "inability to stand to the instructed position," and the fact that Mr. Linin "began the test early," "confused his left and right food," "put his hands at the small of his back," "stepped off the line several times," "missed heel-to-toe several times," "performed an improper turn," and "drifted to the left." Mr. Linin contests these results and presents expert testimony that an individual with a leg injury is not eligible to perform the nine-step walk and turn test.

Following the nine-step walk and turn test, Trooper Neff invited Mr. Linin to sit down on the bumper of Trooper Neff's patrol vehicle because Mr. Linin was shaking. Mr. Linin contends he was shaking because he "was so scared, just scared out of [his] mind."

Trooper Neff then had Mr. Linin perform the one-leg stand test. Troop Neff contends that Mr. Linin displayed four clues of impairment, including the fact that Mr. Linin continued to shake, "raised his hands, hopped and swayed, [and] was unable to get past a four or five second count without putting his foot down." Mr. Linin conducted the one-leg stand test on both his injured and uninjured legs. Mr. Linin also contests the use of the one-leg stand test and presents expert testimony that an individual with a leg injury is not eligible to perform it.

After administering the field sobriety tests, Trooper Neff asked Mr. Linin to blow into a portable breathalyzer. Mr. Linin declined to blow into the device, saying that his ex-wife, a

lawyer, had warned him not to blow into a portable breathalyzer. Instead, Mr. Linin stated, "I'd rather take a blood test."

At this point, Trooper Neff arrested Mr. Linin for driving under the influence ("DUI"), handcuffed Mr. Linin, and placed him in Trooper Neff's vehicle. Following the arrest, Trooper Neff searched Mr. Linin's vehicle, impounded it, and inventoried its contents. During the inventory search, there were five officers at the scene, several of whom later left to conduct patrols in other areas.

While searching Mr. Linin's vehicle, Trooper Neff stated to the other officers on the scene that now "that I got a DUI, [UHP administration] may get off my back." Trooper Neff also admits that he searched Mr. Linin's vehicle in part for the purpose of finding contraband. But there is no allegation that Trooper Neff found alcohol or contraband in Mr. Linin's vehicle when he conducted the inventory search.

Trooper Neff took Mr. Linin to the UHP Tooele, Utah office where Mr. Linin agreed to submit to a blood test. Another officer attempted to obtain a blood sample but was unable to successfully draw Mr. Linin's blood. The record does not provide any reason as to why the officer was unable to obtain a blood sample from Mr. Linin or why Mr. Linin was not taken to a medical facility for the purpose of obtaining a sample. No evidence of Mr. Linin's blood alcohol content ("BAC") was ever obtained.

After the failed attempt to obtain a blood sample, Trooper Neff transported Mr. Linin to the Tooele County Jail, and booked him for DUI and failing to move over for an emergency vehicle. Mr. Linin alleges that while he was at the Tooele County Jail, he took a breath test that showed he had a BAC of 0.00. Mr. Linin was released on bail several hours later.

Mr. Linin was charged with violations of Utah Code § 41-6A-904(2), failing to move

over when approaching an emergency vehicle; Utah Code § 41-6A-502, driving under the influence of alcohol; and Utah Code § 41-6A-1635, obstructed visibility due to a broken window. Mr. Linin hired an attorney to represent him on these charges. The charges against Mr. Linin were later dismissed.

Mr. Linin filed suit on April 28, 2015, bringing three claims against Trooper Neff and UHP under 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments to the U.S. Constitution: (1) false arrest; (2) unlawful search and seizure; and (3) unlawful policy, practice, and/or custom of UHP. UHP subsequently filed a motion to dismiss for lack of subject matter jurisdiction, arguing that it was immune from Mr. Linin's claims under the Eleventh Amendment. Mr. Linin did not oppose UHP's motion. Accordingly, the court granted UHP's motion and dismissed Mr. Linin's claims against UHP with prejudice (Docket 16).

On April 20, 2016, Trooper Neff filed a motion for summary judgment, arguing that he is entitled to qualified immunity from Mr. Linin's claims. In response, Mr. Linin contends that there are disputed issues of material fact precluding summary judgment.

## LEGAL STANDARD

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A dispute is genuine only if "a reasonable jury could find in favor of the nonmoving party on the issue." *Macon v. United Parcel Serv., Inc.*, 743 F.3d 708, 712 (10th Cir. 2014). "In making this determination, 'we view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party.'" *Id.* at 712–13 (quoting *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1225 (10th Cir. 2000)).

But when qualified immunity is presented at the summary judgment phase, the court must

employ a different paradigm: "When a defendant asserts qualified immunity at summary judgment, the burden shifts to the plaintiff, who must clear two hurdles in order to defeat the defendant's motion." *Riggins v. Goodman*, 572 F.3d 1101, 1107 (10th Cir. 2009). "[T]he plaintiff bears the burden of showing both (1) a violation of a constitutional right; and (2) that the constitutional right was clearly established at the time of the violation." *Felders ex rel. Smedley v. Malcom*, 755 F.3d 870, 877 (10th Cir. 2014). The court has "discretion to decide 'which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand.'" *Courtney v. Oklahoma ex rel. Dep't of Pub. Safety*, 722 F.3d 1216, 1222 (10th Cir. 2013) (quoting *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)).

In determining whether the plaintiff has met his burden, "courts are required to view the facts and draw reasonable inferences 'in the light most favorable to the party opposing the [summary judgment] motion.' In qualified immunity cases, this usually means adopting . . . the plaintiff's version of the facts." *Scott v. Harris*, 550 U.S. 372, 378 (2007) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (per curiam)); *Riggins*, 572 F.3d at 1107 (noting that, when addressing the legal inquiry posed by the qualified immunity context, the court "accept[s] the facts as the plaintiff alleges them"). But

> a plaintiff's version of the facts must find support in the record . . . . "As with any motion for summary judgment, '[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts.'"

*Thomson v. Salt Lake Cty.*, 584 F.3d 1304, 1312 (10th Cir. 2009) (quoting *York v. City of Las Cruces*, 523 F.3d 1205, 1210 (10th Cir. 2008)); *see also Scott*, 550 U.S. at 380–81 (holding that the lower court "should have viewed the facts in the light depicted by the videotape" rather than relying on Respondent's version of events because "Respondent's version of events is so utterly discredited by the record that no reasonable jury could have believed him"). Thus, at this stage in

the proceedings,

> the objective is *not* to determine whether a plaintiff survives summary judgment because plaintiff's evidence raises material issues that warrant resolution by a jury. Instead, the principal purpose is to determine whether plaintiff's factual allegations are sufficiently grounded in the record such that they may permissibly comprise the universe of facts that will serve as the foundation for answering the *legal* question before the court.

*Cox v. Glanz*, 800 F.3d 1231, 1243 (10th Cir. 2015) (quoting *Thomson*, 584 F.3d at 1326

(Holmes, J., concurring)).

As to the second prong, a constitutional right is clearly established only if "'the contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Quinn v. Young*, 780 F.3d 998, 1004–05 (10th Cir. 2015) (quoting *Wilson v. Montano*, 715 F.3d 847, 852 (10th Cir. 2013)). "A plaintiff may satisfy this standard by identifying an on-point Supreme Court or published Tenth Circuit decision." *Id.* at 1005. Or "the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Id.* (quoting *Weise v. Casper*, 593 F.3d 1163, 1167 (10th Cir. 2010)). "[T]he plaintiff need not locate a *perfectly* on-point case. . . . '[O]fficials can still be on notice that their conduct violates established law even in novel factual circumstances.'" *Id.* (quoting *Hope v. Pelzer*, 536 U.S. 730, 741 (2002)). But the Supreme Court has cautioned courts "not to define clearly established law at a high level of generality." *Id.* (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)); *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014) ("[W]e have instructed that courts should define the 'clearly established' right at issue on the basis of the 'specific context of the case.'" (citation omitted)).

If the plaintiff meets his two-part burden by demonstrating the violation of a clearly established constitutional right, the burden then shifts to "the defendant to show that there are no disputes of material fact as to whether his conduct was objectively reasonable in light of clearly

established law and the information known to the defendant at the time." *Felders*, 755 F.3d at

877 (quoting *Mick v. Brewer*, 76 F.3d 1127, 1134 (10th Cir. 1996)). Unlike the court's evaluation

of the plaintiff's burden, the evaluation of the defendant's burden is made under the traditional

summary judgment standard. *See id*.; *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001) ("If

the plaintiff successfully establishes the violation of a clearly established right, the burden shifts

to the defendant, who must prove that 'there are no genuine issues of material fact and that he or

she is entitled to judgment as a matter of law.'" (citations omitted)); *Thomson*, 584 F.3d at 1326

(Holmes, J., concurring) ("It is only *after* plaintiff crosses the legal hurdle comprised of his or

her two-part burden of demonstrating the violation of a constitutional right that was clearly

established, that courts should be concerned with the *true* factual landscape—as opposed to the

factual landscape as plaintiff would have it. Based upon that true factual landscape, courts should

determine whether defendant can carry the traditional summary judgment burden of establishing

that there are no genuine issues of material fact for jury resolution and that defendant is entitled

to judgment as a matter of law.").

## ANALYSIS

The court will first consider Trooper Neff's motion for summary judgment and qualified

immunity arguments on Mr. Linin's claims against Trooper Neff in his individual capacity. The

court will then evaluate Trooper Neff's motion for summary judgment on Mr. Linin's claims

against Trooper Neff in his official capacity.

## I.    Claims Against Trooper Neff in His Individual Capacity

Mr. Linin asserts two claims against Trooper Neff in his individual capacity under 42

U.S.C. § 1983 and the Fourth and Fourteenth Amendments: (1) false arrest; and (2) unlawful

search and seizure. Under these claims, Mr. Linin challenges his arrest for DUI and the

subsequent impoundment and inventory search of his vehicle. The parties' qualified immunity arguments with respect to each of these events are evaluated below.

### A.     False Arrest

Trooper Neff contends that he is entitled to qualified immunity on Mr. Linin's false arrest claim. But Mr. Linin asserts that there are disputed issues of material fact as to whether Trooper Neff had reasonable suspicion to expand the scope of the traffic stop to conduct the field sobriety tests for DUI and whether Trooper Neff had probable cause to arrest Mr. Linin for DUI. Each of these arguments is addressed below.

### 1.     Reasonable Suspicion to Expand the Scope of a Traffic Stop

Mr. Linin first claims that Trooper Neff is not entitled to qualified immunity because Trooper Neff did not have reasonable suspicion to expand the scope of the traffic stop to conduct field sobriety tests. "An investigative detention is a 'Fourth Amendment seizure[] of limited scope and duration requiring reasonable suspicion of criminal activity.'" *Romero v. Story*, 672 F.3d 880, 886 (10th Cir. 2012) (quoting *Lundstrom v. Romero*, 616 F.3d 1108, 1120 (10th Cir. 2010)). And it is a clearly established Fourth Amendment right that a police officer must have reasonable suspicion in order to expand the scope of a traffic stop to conduct field sobriety tests. *Vondrak v. City of Las Cruces*, 535 F.3d 1198, 1206 (10th Cir. 2008); *Wilder v. Turner*, 490 F.3d 810, 815 (10th Cir. 2007).

"Under the reasonable suspicion standard, a police officer 'must have a particularized and objective basis for suspecting the particular person stopped of criminal activity.'" *Vondrak*, 535 F.3d at 1206 (quoting *United States v. Cortez*, 449 U.S. 411, 417–18 (1981)). This standard is based on the "'totality of the circumstances,' and 'officers [may] draw on their own experience and specialized training to make inferences from and deductions about the cumulative

information available to them that might well elude an untrained person.'" *Id.* at 1206–07

(quoting *United States v. Arvizu*, 534 U.S. 266, 273 (2002)). In the DUI context, an officer has

reasonable suspicion to detain a plaintiff in order to conduct a DUI investigation based upon the

smell of alcohol alone. *See id.* at 1207 (citing *Miller v. Harget*, 458 F.3d 1251, 1259 (11th Cir.

2006) ("[W]hen [the officer] smelled alcohol coming from the vehicle [Plaintiff] had been

driving, he had reasonable suspicion to detain [Plaintiff] in order to investigate."); *United States

v. Neumann*, 183 F.3d 753, 756 (8th Cir. 1999) ("The detection of alcohol on [Defendant's]

breath provided [the officer] with a reasonable suspicion to further detain [Defendant] and

expand the scope of the investigation.")). And "[i]n the context of a § 1983 action, . . . the officer

'is entitled to qualified immunity if a reasonable officer could have believed that [reasonable

suspicion] existed to . . . detain the plaintiff.'" *Id.* (quoting *Cortez v. McCauley*, 478 F.3d 1108,

1120 (10th Cir. 2007)).

Here, Mr. Linin argues that Trooper Neff violated his clearly established right under the

Fourth Amendment by expanding the scope of the traffic stop without reasonable suspicion. But

Trooper Neff contends that he had reasonable suspicion to investigate Mr. Linin for DUI because

Mr. Linin had watery and glassy eyes and Trooper Neff detected the odor of alcohol coming from

Mr. Linin's vehicle and person. Mr. Linin disputes these allegations. And Mr. Linin maintains

that he had not been drinking.

In determining whether Mr. Linin has met his two-part burden under the qualified

immunity standard, the court must "adopt[] . . . the plaintiff's version of the facts" unless his

"version of events is so utterly discredited by the record that no reasonable jury could have

believed him." *Scott*, 550 U.S. at 378, 380. But nothing in the record "utterly discredits" Mr.

Linin's factual assertions. In fact, the record supports them. The dash cam video shows no signs

of impairment as Mr. Linin conversed with Trooper Neff and then followed him to the patrol vehicle. And the video is of little help in determining whether Mr. Linin smelled of alcohol. Further, it is impossible to tell from the video whether Mr. Linin's eyes were watery and glassy. Indeed, the only testimony contradicting Mr. Linin's version of events is that of Trooper Neff, himself. Because nothing in the record "utterly discredits" Mr. Linin's factual assertions, *see id.*, the court must "accept the facts as [Mr. Linin] alleges them," *see Riggins*, 572 F.3d at 1107.

Setting these facts aside and accepting Mr. Linin's assertion that he had not been drinking, the only fact on which Trooper Neff relies in support of reasonable suspicion is his allegation of Mr. Linin's "slow, deliberate speech." But based on Tenth Circuit precedent, an individual's slow and deliberate speech is not enough by itself to give rise to reasonable suspicion. In *Vondrak v. City of Las Cruces*, 535 F.3d 1198 (10th Cir. 2008), the Tenth Circuit held that it was a "close case" when the police officer's "*only* factual basis for conducting the field sobriety tests was [the plaintiff's] admission to drinking one beer several hours earlier." *Id.* at 1207 (emphasis added). In other cases, the Tenth Circuit has held that a police officer had reasonable suspicion when the plaintiff had "*unusually* slow and deliberate speech," along with other indicia of alcohol consumption. *Wilder*, 490 F.3d at 815. If an admission to drinking taken by itself barely meets the threshold for reasonable suspicion, *see Vondrak*, 535 F.3d at 1207, slow and deliberate speech taken by itself certainly falls below the constitutional limit.

Moreover, the dash cam video does not support Trooper Neff's assertion. After viewing the dash cam video, the court finds that Mr. Linin's speech was not so "unusually slow and deliberate" as to indicate that Mr. Linin was under the influence of alcohol. *See Wilder*, 490 F.3d at 815. "[S]ome facts must be outrightly dismissed as so innocent or susceptible to varying interpretations as to be innocuous." *U.S. v. Simpson*, 609 F.3d 1140, 1147 (10th Cir. 2010)

(citations omitted). Accordingly, the court finds that "a reasonable officer could [not] have believed that [reasonable suspicion] existed to . . . detain" Mr. Linin to investigate for DUI based on his speech alone. *See Vondrak*, 535 F.3d at 1207.

Thus, the court holds that Mr. Linin has met his two-part burden of showing a violation of a constitutional right—Trooper Neff's actions in extending the initial traffic stop to investigate for DUI without reasonable suspicion—that was clearly established at the time of the violation. *See Vondrak*, 535 F.3d at 1206–07 (holding that a police officer must have reasonable suspicion in order to expand the scope of a traffic stop to conduct field sobriety tests). The burden therefore shifts to Trooper Neff to show "that there are no disputes of material fact and that he . . . is entitled to judgment as a matter of law." *Medina*, 252 F.3d at 1128 (citations omitted).

Trooper Neff has not met his burden under the traditional summary judgment standard. The facts that he alleges give rise to reasonable suspicion—Mr. Linin's watery and glassy eyes and the odor of alcohol—are genuinely in dispute. As noted above, nothing in the record "utterly discredits" Mr. Linin's factual assertions. *See Scott*, 550 U.S. at 380. And these facts are material to determining whether Trooper Neff actually had reasonable suspicion to continue to detain Mr. Linin. Without them, Trooper Neff had no reasonable suspicion to conduct field sobriety tests on Mr. Linin. *See Vondrak*, 535 F.3d at 1207. And without them, Trooper Neff would necessarily have violated Mr. Linin's clearly established Fourth Amendment right.

Trooper Neff argues that such disputes of material fact are not enough to overcome qualified immunity. Citing *Stonecipher v. Valles*, 759 F.3d 1134, 1142 (10th Cir. 2014), Trooper Neff argues that "the burden is on the plaintiff to make a substantial showing of deliberate falsehood or reckless disregard for truth by the officer seeking probable cause." Specifically, he contends that there cannot be any disputes of material fact here because Mr. Linin "has offered

no evidence of deliberate falsehood in [Trooper] Neff's assertion that he detected the odor of alcohol." But *Stonecipher* is distinguishable. Not only did *Stonecipher* involve a determination of whether an officer's *probable cause* findings were reasonable, it also involved a question of whether an officer obtained an invalid search warrant by misrepresenting or omitting material facts to a magistrate judge. *See id. Stonecipher*'s "substantial showing" standard is simply inapplicable to the case at hand.

Furthermore, the facts do give rise to a suggestion of deliberate falsehood in Trooper Neff's assertion that he detected the odor of alcohol. Although Trooper Neff alleges that Mr. Linin's vehicle smelled like alcohol, Trooper Neff did not confront Mr. Linin about the smell of alcohol at the beginning of the traffic stop. Rather, Trooper Neff waited until after he had verified the validity of Mr. Linin's driver's license and registration and had a drug dog sniff around Mr. Linin's vehicle before he asserted he smelled alcohol. And one is left to wonder how Trooper Neff could have smelled alcohol when there is no allegation that any alcohol was found in Mr. Linin's vehicle and the breathalyzer test Mr. Linin took at the Tooele County Jail came back with a 0.00 BAC.

It is also curious that Trooper Neff did not attempt to obtain BAC results from Mr. Linin via a blood test until after he had conducted the inventory search of Mr. Linin's vehicle. At the beginning of the inventory search, there were five officers of the scene, several of whom later left to conduct patrols in other areas and who likely could have taken Mr. Linin to the station to obtain BAC results sooner. Although the inventory search was not particularly lengthy, the delays in inquiring about whether Mr. Linin had been drinking and in obtaining BAC results further bolsters Mr. Linin's assertion that he had not consumed alcohol. Coupled with Trooper Neff's statement to the other officers on the scene that UHP administration may get off his back

now that he had arrested someone for DUI, these facts cast a shadow on the truthfulness of Trooper Neff's allegations.

And finally, in evaluating whether there was reasonable suspicion to justify expanding the scope of the traffic stop, the court must consider the totality of the circumstances. *See Arvizu*, 534 U.S. at 274. Additional facts to be considered include the fact that Mr. Linin's driving pattern was not erratic and that Mr. Linin showed no signs of impairment on the dash cam video. In addition, Mr. Linin's speech was not slurred and he was able to walk to Trooper Neff's patrol vehicle without difficulty.

Because there are disputes of material fact surrounding whether Trooper Neff had reasonable suspicion to expand the scope of the traffic stop and conduct the field sobriety tests, the court cannot grant Trooper Neff qualified immunity on the reasonable suspicion issue. *See Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1313 (10th Cir. 2002) (holding that a court cannot "grant a defendant official qualified immunity if material facts are in dispute"). These "factual differences . . . render it impossible to make an initial determination as to whether [Trooper Neff] violated [Mr. Linin's] constitutional right to be free from unreasonable seizure." *See id.* Accordingly, a jury must resolve these disputed facts and the court must deny summary judgment on qualified immunity with regard to the expansion of the traffic stop's scope.

### 2. Probable Cause to Arrest for DUI

Mr. Linin next argues that Trooper Neff is not entitled to qualified immunity because Trooper Neff did not have probable cause to arrest Mr. Linin for DUI. "A police officer violates an arrestee's clearly established Fourth Amendment right to be free [from] unreasonable seizure if the officer makes a warrantless arrest without probable cause." *Id.* at 1312. "Probable cause to arrest exists only when the facts and circumstances within the officers' knowledge, and of which

they have reasonably trustworthy information, are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed." *Cortez*, 478 F.3d at 1116 (quoting *United States v. Valenzuela*, 365 F.3d 892, 896 (10th Cir. 2004)).

"In the context of a qualified immunity defense on an unlawful . . . arrest claim, [the Tenth Circuit] ascertain[s] whether a defendant violated clearly established law 'by asking whether there was "arguable probable cause"' for the challenged conduct." *Stonecipher*, 759 F.3d at 1141. "Arguable probable cause" exists when "the officers' conclusions rest on an objectively reasonable, even if mistaken, belief that probable cause exists." *Id.* Thus, an officer "is entitled to qualified immunity if a reasonable officer could have believed that probable cause existed to arrest or detain the plaintiff." *Id.* (quoting *Cortez*, 478 F.3d at 1120).

Here, Mr. Linin argues that Trooper Neff violated his clearly established right under the Fourth Amendment by arresting him for DUI without probable cause. But Trooper Neff contends that he had probable cause to arrest Mr. Linin for DUI because Mr. Linin smelled like alcohol, had watery and glassy eyes, failed the field sobriety tests, and refused to blow into the portable breathalyzer. As discussed above, there are disputes of material fact as to whether Mr. Linin smelled of alcohol or had watery and glassy eyes. But these disputes are of no consequence to the false arrest claim if Mr. Linin's poor performance on the field sobriety tests or his refusal to take the breathalyzer test or gave rise to probable cause. The court addresses each of these issues in turn.

Mr. Linin disputes whether Trooper Neff administered the field sobriety tests correctly. As such, Mr. Linin claims that probable cause could be based only on Mr. Linin's refusal to blow into the portable breathalyzer, and that an individual's refusal to blow into the portable breathalyzer alone, especially when he offers to submit to a blood test instead, is insufficient to

give rise to probable cause.

Mr. Linin also argues that this court should not consider his poor performance on the field sobriety tests because Trooper Neff improperly administered them. Specifically, Mr. Linin presents expert testimony showing that Trooper Neff did not perform the necessary number of passes of stimuli and did not hold the stimuli in place long enough to establish nystagmus on the HGN test. Mr. Linin's expert further asserts that an individual with a bad leg, such as Mr. Linin, is ineligible to perform the nine-step walk and turn and one-leg stand tests.

Whether Trooper Neff properly administered the field sobriety tests is a close call. But regardless of whether Trooper Neff properly administered the field sobriety tests, Mr. Linin has failed to meet his burden to show that basing a probable cause determination on flawed field sobriety tests violates a clearly established constitutional right. Mr. Linin cites to a handful of cases from courts outside of the Tenth Circuit to argue that probable cause can only be based on "reasonably trustworthy information" and that field sobriety test "evidence is only a reasonably trustworthy indication of intoxication if the [field sobriety tests] have been administered correctly." Yet these cases do not establish that "the clearly established weight of authority from other courts [find] the law to be as [he] maintains." *Quinn*, 780 F.3d at 1005. Further, Mr. Linin does not cite to any case law establishing that field sobriety tests cannot be used to establish probable cause when an individual alleges that he or she has a "bad leg" or other disability. Thus, Mr. Linin has failed to meet his burden of showing that Trooper Neff violated a constitutional right that was clearly established at the time of Mr. Linin's arrest for DUI.

Even if the court considers "the factual landscape as [Mr. Linin] would have it," *see Thomson*, 584 F.3d at 1325–27 (Holmes, J., concurring), and adopts Mr. Linin's assertion that the field sobriety tests should not be considered because Trooper Neff administered them improperly,

Mr. Linin still has not met his burden under the qualified immunity standard because his refusal to submit to the breathalyzer test arguably gives rise to probable cause.

Mr. Linin contends that the facts do not establish a refusal on his part to blow into the portable breathalyzer. Rather, they establish only his expressed "preference for a blood test over a breath test." Mr. Linin also argues that Trooper Neff "presents no cases where a court has found [that] requesting a blood alcohol test as an alternative to a breath test solely establishes probable cause for an arrest." Mr. Linin further contends that Mr. Linin's "case is distinguishable from cases wherein suspects refused to participate in a DUI investigation because Linin's willingness to provide a blood sample dispels any motivation by Linin to conceal incriminating evidence."

But it is not Trooper Neff's burden to present a case showing that a preference for blood tests is insufficient to establish probable cause. Rather, to show that a constitutional right is clearly established, it is Mr. Linin—not Trooper Neff—who must point to "an on-point Supreme Court or published Tenth Circuit decision" supporting his arguments. *Quinn*, 780 F.3d at 1005. Or Mr. Linin can point to "the clearly established weight of authority from other courts [finding] the law to be as [he] maintains." *Id.* While Mr. Linin distinguishes cases cited by Trooper Neff holding that refusal to blow in a breathalyzer along with other indicia of alcohol consumption establish probable cause, *see Wilder*, 490 F.3d at 815; *Summers v. Utah*, 927 F.2d 1165, 1166 (10th Cir. 1991), Mr. Linin has not pointed to any case law—controlling or persuasive—clearly establishing that a plaintiff's preference for a blood test over a breathalyzer is an insufficient fact by itself to give rise to probable cause.

"In order '[f]or a constitutional right to be clearly established, the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Quinn*, 780 F.3d at 1004–05 (quoting *Wilson*, 715 F.3d at 852). And the

current contours of the law on an individual's refusal to take a breathalyzer test and preference for a blood test are such that "any constitutional violation would not have been apparent based on the clearly established law existing at that time." *Id.* at 1007. In fact, current Tenth Circuit precedent relies on case law that bolsters Trooper Neff's actions in arresting Mr. Linin following his refusal to take a breathalyzer test: "[P]robable cause developed, justifying [the plaintiff's] arrest, because [the plaintiff] refused to take a breathalyzer test." *Miller*, 458 F.3d at 1259–60; *see also Wilder*, 490 F.3d at 815 (citing *Miller*, 458 F.3d at 1259–60 and holding that "[a] reasonable officer . . . could view Plaintiff's refusal to submit to a field sobriety test as indicative of an intent to conceal evidence of guilt"). And under Utah law, "A person who has been requested . . . to submit to a chemical test or tests of the person's breath, blood, or urine, or oral fluids may not select the test or tests to be administered." Utah Code § 41-6a-520(1)(d)(i). "[R]efusal to submit to the test or tests may result in revocation of the person's license . . . , [and a] prohibition of driving." *Id.* § 520(2).

Thus, the clearly established law existing at the time of Mr. Linin's arrest for DUI would not have given Trooper Neff fair warning that he lacked probable cause to arrest Mr. Linin based on Mr. Linin's refusal to take a breathalyzer test or on Mr. Linin's poor performance on the field sobriety tests. Because Mr. Linin has not identified any clearly established law indicating otherwise, the court holds that Trooper Neff is entitled to qualified immunity with regard to his probable cause determination and Mr. Linin's subsequent arrest for DUI.

### B. Impoundment and Inventory Search of Mr. Linin's Vehicle

Trooper Neff contends that he is entitled to qualified immunity for impounding and inventorying Mr. Linin's vehicle following Mr. Linin's arrest for DUI. But Mr. Linin argues that Trooper Neff violated his clearly established rights by impounding his vehicle in violation of

state law and conducting an inventory search as a pretext for discovering contraband. Each of these arguments is addressed below.

### 1. Impoundment of Mr. Linin's Vehicle

Mr. Linin first argues that Trooper Neff violated his clearly established rights by impounding his vehicle in violation of state law. Specifically, Mr. Linin argues that because his arrest was unconstitutional, the subsequent impoundment of his vehicle, which was based on that arrest, was also unconstitutional.

Officers may impound a vehicle without a warrant if they are acting pursuant to "specific state . . . motor vehicle laws." *U.S. v. Hannum*, 55 F. App'x 872, 874 (10th Cir. 2003); *U.S. v. Haro-Salcedo*, 107 F.3d 769, 771 (10th Cir. 1997). Under Utah Code § 41-6a-527, an officer may impound a vehicle if the operator of the vehicle is arrested for DUI in violation of Utah Code § 41-6A-502. Because Trooper Neff arrested Mr. Linin for DUI under Utah Code § 41-6A-502, Trooper Neff lawfully impounded Mr. Linin's vehicle pursuant to state law. Thus, Trooper Neff did not violate Mr. Linin's clearly established Fourth Amendment rights and is entitled to qualified immunity on Mr. Linin's impoundment claims.

### 2. Inventory Search of Mr. Linin's Vehicle

Mr. Linin next argues that Trooper Neff violated his clearly established rights by conducting an inventory search of his vehicle as a pretext for discovering contraband. "It is common practice for the police to conduct an inventory of the contents of vehicles they have taken into their custody or are about to impound." *United States v. Tueller*, 349 F.3d 1239, 1243 (10th Cir. 2003) (quoting WAYNE R. LAFAVE, SEARCH AND SEIZURE § 7.4, at 536 (3d ed. 1996 & Supp. 2003). As such, "[a]n inventory search is a well-defined exception to the warrant requirement of the Fourth Amendment." *Haro-Salcedo*, 107 F.3d at 772.

An inventory search is "designed to effect three purposes: protection of the owner's property, protection of the police against claims of lost or stolen property, and protection of the police from potential danger." *Id.* "To be justified as an inventory search, however, the search cannot be investigatory in nature but must instead be used only as a tool to record the defendant's belongings to protect the police from potential liability." *United States v. Edwards*, 632 F.3d 633, 644 (10th Cir. 2001). Accordingly, these searches "are reasonable only if conducted according to standardized procedures." *Haro-Salcedo*, 107 F.3d at 772; *cf. United States v. Sanders*, 796 F.3d 1241, 1245 (10th Cir. 2015) ("Most recently, we held that '[g]ranting police discretion over whether to impound and inventory a vehicle is permissible so long as officers exercise that discretion according to standardized criteria, and not in bad faith or for the sole purpose of investigation.'" (quoting *United States v. Taylor*, 592 F.3d 1104, 1108 (10th Cir. 2010)).

Here, Trooper Neff's inventory search was properly conducted and did not violate Mr. Linin's rights. Section 704.5 of the Utah Department of Public Safety's ("UDPS") Policy Manual states,

> All property in a stored or impounded vehicle . . . shall be inventoried and listed on the Vehicle Impound Report Form. This includes the trunk and any compartments or containers, even if closed and/or locked. Members conducting inventories should be as thorough and accurate as practical in preparing an itemized inventory. These inventory procedures are for the purpose of protecting an owner's property while in police custody, to provide for the safety of others, and to protect the Department against fraudulent claims of lost, stolen or damaged property.

Trooper Neff's search of Mr. Linin's vehicle complied with this policy. As seen on the dash cam video, Trooper Neff searched the interior of Mr. Linin's vehicle as well as the bed of the vehicle and the containers in it. Trooper Neff identified the items found in Mr. Linin's vehicle on the UHP Vehicle Inventory Form. And Mr. Linin does not contest whether Trooper Neff's search complied with standardized procedure.

But Mr. Linin does argue that Trooper Neff's inventory search of his vehicle was a pretext for discovering contraband. Specifically, Mr. Linin points to Trooper Neff's deposition, in which Trooper Neff testified that he "was looking for contraband . . . . Alcohol, drugs, anything that would be illegal" when he conducted the inventory search.

Despite Mr. Linin's arguments to the contrary, an officer's subjective desire to search for drugs will not by itself invalidate an inventory conducted pursuant to a lawful impoundment of a vehicle where the officer strictly adheres to the applicable inventory procedures. *See Edwards*, 632 F.3d at 644; *Haro-Salcedo*, 107 F.3d at 773. For example, in both *United States v. Edwards*, 632 F.3d 633 (10th Cir. 2001) and *United States v. Haro-Salcedo*, 107 F.3d 769 (10th Cir. 1997), the Tenth Circuit found that the inventory searches were pretextual because—aside from the subjective intent of the officers conducting the searches—the searches in both of these cases failed to follow any standardized criteria or procedure that must guide an inventory search. *See Edwards*, 632 F.3d at 644; *Haro-Salcedo*, 107 F.3d at 773.

The Tenth Circuit has further recognized that "[w]hile mixed motives or suspicions undoubtedly exist in many inventory searches, such motives or suspicions alone will not invalidate an otherwise proper inventory search." *United States v. Cecala*, 203 F.3d 836, at *2 (10th Cir. 2000) (unpublished table decision). And as far as the court is aware, all other circuit courts addressing this issue have reached the same conclusion.[1]

---

[1] *See, e.g.*, *United States v. Frank*, 864 F.2d 992, 1001 (3d Cir. 1988) ("The mere fact that an inventory search may also have an investigatory purpose does not, however, invalidate it."); *United States v. Judge*, 864 F.2d 1144, 1146-47 (5th Cir. 1989) (upholding decision to impound and inventory where decisions "could have legitimately had an administrative purpose"); *United States v. Lumpkin*, 159 F.3d 983, 987 (6th Cir. 1998) ("However, the fact that an officer suspects that contraband may be found does not defeat an otherwise proper inventory search."); *United States v. Lewis*, 3 F.3d 252, 254 (8th Cir. 1993) ("The presence of an investigative motive, however, does not invalidate an otherwise valid inventory search."); *United States v. Bowhay*, 992 F.2d 229, 231 (9th Cir. 1993) ("When the police conduct would have been the same regardless of the officer's subjective state of mind, no purpose is served by attempting to tease out the officer's 'true' motivation. Penalizing officers who are candid enough to admit that they hope to find evidence of a crime can only encourage obfuscation and dishonesty, without protecting reasonable expectations of privacy."); *United States v. Roberson*, 897 F.2d 1092, 1096 (11th Cir.

Here, Trooper Neff's inventory of the vehicle was justified under Utah law and was conducted pursuant to UDPS policy. And unlike the situations in *Edwards* and *Haro-Salcedo*, there were no deficiencies in the decisions to inventory the vehicle or in the inventory process itself. Regardless of Trooper Neff's subjective intent, the circumstances here dictated that, under UDPS policy, Mr. Linin's vehicle and its contents be inventoried. Because Trooper Neff followed UDPS policy, the court holds that his dual motive in hoping to find contraband does not invalidate the otherwise lawful inventory. Thus, Trooper Neff is entitled to qualified immunity for his actions in conducting the inventory search of Mr. Linin's vehicle.

Accordingly, with regard to Mr. Linin's claims against Trooper Neff in Trooper Neff's individual capacity, Trooper Neff is not entitled to qualified immunity regarding his reasonable suspicion determination and the expansion of the traffic stop's scope. But Trooper Neff is entitled to qualified immunity on his probable cause determination to arrest Mr. Linin for DUI, as well as his actions in impounding and inventorying Mr. Linin's vehicle pursuant to that arrest.

## II.     Claims Against Trooper Neff in his Official Capacity

Trooper Neff also moves for summary judgment on Mr. Linin's official capacity claims, arguing that Trooper Neff is entitled to sovereign immunity under Eleventh Amendment. Mr. Linin does not contest Trooper Neff's sovereign immunity arguments.

Under the Eleventh Amendment, "States may not be sued in federal court unless they consent to it in unequivocal terms or unless Congress, pursuant to a valid exercise of power, unequivocally expresses its intent to abrogate the immunity." *Green v. Mansour*, 474 U.S. 64, 68

---

1990) (noting that "the mere expectation of uncovering evidence will not vitiate an otherwise valid inventory search" (citation omitted)); *see also Horton v. California*, 496 U.S. 128, 138 (1990) ("[E]venhanded law enforcement is best achieved by the application of objective standards of conduct, rather than standards that depend upon the subjective state of mind of the officer. The fact that an officer is interested in an item of evidence and fully expects to find it in the course of a search should not invalidate its seizure if the search is confined in area and duration by the terms of a warrant or a valid exception to the warrant requirement.").

(1985). "This prohibition encompasses suits against state agencies," as well as "[s]uits against state officials acting in their official capacities." *Muscogee (Creek) Nation v. Okla. Tax Comm'n*, 611 F.3d 1222, 1227 (10th Cir. 2010); *see also Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) ("[A] suit against a state official in his or her official capacity . . . is no different from a suit against the State itself."). "Because § 1983 does not abrogate a state's [or state official's] sovereign immunity," and because Utah has not consented to Mr. Linin's suit against Trooper Neff in his official capacity, sovereign immunity bars Mr. Linin's claims against Trooper Neff in his official capacity. *See Muscogee (Creek) Nation*, 611 F.3d at 1227. The court therefore grants summary judgment in favor of Trooper Neff on Mr. Linin's claims against Trooper Neff in his official capacity.

## CONCLUSION

Based on the foregoing, the court GRANTS IN PART and DENIES IN PART Defendant's Motion for Summary Judgment (Docket 21). Defendant is not entitled to qualified immunity with regard to his reasonable suspicion determination and the expansion of the traffic stop's scope. But Defendant is entitled to qualified immunity on his probable cause determination to arrest Plaintiff for DUI as well as his actions in impounding and inventorying Plaintiff's vehicle. In addition, the court grants summary judgment in favor of Defendant on Plaintiff's claims against Defendant in his official capacity.

DATED this 2nd day of August, 2016.

BY THE COURT:

Jill N. Parrish
United States District Judge