IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| REX LININ, an individual,<br><br>               *Plaintiff*,<br><br>v.<br><br>TROOPER CHAMBERLIN NEFF, in his individual capacity,<br><br>               *Defendant*. | **MEMORANDUM DECISION AND ORDER GRANTING DEFENDANT'S MOTION *IN LIMINE* TO EXCLUDE EXPERT TESTIMONY**<br><br>Case No. 2:15-cv-298-JNP-PMW<br><br>Judge Jill N. Parrish<br>Magistrate Judge Paul M. Warner |

      Currently before the Court is Defendant's Motion *in Limine* to Exclude Expert Testimony (ECF No. 41). Having considered the Motion, the related pleadings, and the record, the Court GRANTS Defendant's Motion *in Limine* to Exclude Expert Testimony.

**I.    BACKGROUND**

      On December 16, 2014, Trooper Chamberlin Neff pulled over Rex Linin when Linin failed to slow down and move into the left-hand lane while passing an emergency vehicle displaying lights. Trooper Neff claims that, while speaking with Linin, he smelled alcohol coming from Linin's truck. At this point, Trooper Neff asked Linin to come to the patrol car.

      While in the patrol car, Trooper Neff checked Linin's driver's license and registration and asked Linin questions. Trooper Neff told Linin that he smelled alcohol and asked Linin to preform field sobriety tests, on which Linin performed poorly. After administering the tests, Trooper Neff asked Linin to blow into a breathalyzer. Linin declined to blow into the device, saying that his ex-wife, a lawyer, had warned him not to blow into a portable breathalyzer. Instead, Linin stated, "I'd rather take a blood test."

      At this point, Trooper Neff arrested Linin for driving under the influence ("DUI"),

handcuffed Linin, and placed him in the patrol car. Following the arrest, Trooper Neff searched Linin's truck and impounded it.

Linin brought claims against Trooper Neff under 42 U.S.C. § 1983 for false arrest and unlawful search and seizure. Linin argues that Trooper Neff did not have reasonable suspicion to expand the scope of the traffic stop to a DUI investigation. To support his claim, Linin intends to call Travis Jones, a formerly certified DWI instructor, as an expert witness to testify concerning the National Highway Traffic Safety Administration ("NHTSA") standards upon which all law enforcement officers are trained. Specifically, Jones intends to testify as to "what the NHTSA instructs officers to look for when considering whether to engage in a DUI investigation and whether Officer Neff's observations warranted expanding the scope of Rex Linin's traffic stop pursuant to common law enforcement standards."

Jones, in his Investigation Report, outlines 21 cues to which law enforcement officers should look when determining whether to conduct field sobriety tests. Jones notes that Trooper Neff claims to have observed only one of the 21 cues—the odor of alcohol—before he asked Linin to perform field sobriety tests. Jones also opines (1) that the average time between initial contact and a DWI arrest is 13 minutes and (2) that the average time between initial contact and field sobriety tests is 2 minutes and 11 seconds—shorter than the 8 minutes and 6 seconds that it took for Trooper Neff to ask Linin to perform various field sobriety tests. Finally, Jones offers the following conclusions: (1) "Trooper Neff unreasonably detained Mr. Linin longer than was necessary to develop reasonable suspicion of DWI"; (2) "Mr. Linin did not delay the investigation, and the time that Trooper Neff had Mr. Linin was unreasonable"; and (3) "Trooper Neff continued with the DWI investigation improperly" because he had "observed only one observation of the twenty-one cues that is listed for personal contact observations prior to

requesting [standardized field sobriety tests]."

## II. DISCUSSION

Trooper Neff seeks to exclude Jones' testimony on the grounds that Jones intends to testify as to the reasonableness of Trooper Neff's conduct—a legal conclusion on an ultimate issue of the case. Linin responds by claiming that Jones intends to "opine on whether [Trooper] Neff complied with law enforcement standards, a question separate and apart from the ultimate legal conclusion of whether [Trooper] Neff violated Linin's constitutional rights." For the reasons set forth below, the Court holds that Jones is prohibited from offering expert testimony on the subject matter in his Investigation Report.

Under Federal Rule of Evidence 401, evidence is relevant if it (1) "has any tendency to make a fact more or less probable than it would be without the evidence" and (2) "the fact is of consequence in determining the action." Rule 402 states that irrelevant evidence is inadmissible.

Under Rule 702, an expert may testify in the form of an opinion or otherwise if: (1) "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue"; (2) "the testimony is based on sufficient facts or data"; (3) "the testimony is the product of reliable principles and method"; and (4) "the expert has reliably applied the principles and methods to the facts of the case." As a general rule, an expert "may not state his or her opinion as to legal standards nor may he or she state legal conclusions drawn by applying the law to the facts." *Christiansen v. City of Tulsa*, 332 F.3d 1270, 1283 (10th Cir. 1988). The question of whether an officer had reasonable suspicion to expand the scope of a traffic stop to a DUI investigation is a question of law. *See United States v. Trestyn*, 646 F.3d 732, 741 (10th Cir. 2011).

In the context of whether an officer acted reasonably under the Fourth Amendment, the

Tenth Circuit has recognized that expert testimony on law enforcement standards "is both irrelevant and confusing" because "the violation of such standards is not *ipso facto* a Fourth Amendment violation." *Marquez v. City of Albuquerque*, 399 F.3d 1216, 1222 (10th Cir. 2005) (holding that district court did not abuse its discretion in preventing expert from testifying as to his theory that officer should always use minimum amount of force required to effect an arrest).[1]

Indeed, the Eight Circuit has recognized that a trial court commits reversible error when it allows an expert to testify as to "the reasonableness of [an] officer's conduct in light of 'Fourth Amendment standards.'" *Peterson v. City of Plymouth*, 60 F.3d 469, 475 (8th Cir. 1995). For instance, in *Peterson*, the district court erred when it allowed the expert to "set forth his opinion as to why each action [an] officer took was consistent with 'nationally accepted' standards.'" *Id.*; *see also Torres v. City of Los Angeles*, 548 F.3d 1197, 1214 n.11 (9th Cir. 2008) (district court abused its discretion when it denied motion *in limine* to preclude witness from testifying as to whether there was probable cause for an arrest).

Here, Jones' proposed testimony falls into three general categories: (1) testimony on the NHTSA's 21 cues of impairment; (2) testimony on the average length of time between initial contact, field sobriety tests, and arrest; and (3) testimony on whether Trooper Neff acted reasonably during his encounter with Linin. Jones' proposed testimony as to all three categories is improper for the reasons set forth below.

*First*, Jones' proposed testimony concerning the NHTSA's 21 cues of impairment is not

---

[1] Linin cites *Zuchel v. Denver*, 997 F.2d 730 (10th Cir. 1993), for the claim that the Tenth Circuit has "repeatedly upheld the ability of expert witnesses to testify regarding the 'generally accepted police custom and practice,'" but *Zuchel* is distinguishable from the case at hand because *Zuchel* involved a § 1983 failure-to-train claim. *See id.* at 737. Notably, the expert in *Zuchel* testified that the city's training program fell below generally accept police custom and practice at the time; however, the expert did not testify as to whether the city's training program constituted deliberate indifference—the legal issue of the case. *Id.* at 739-40.

4

helpful to the trier of fact and is likely to confuse the jury. *See Marquez*, 399 F.3d at 1222. Jones' proposed testimony as to the NHTSA's 21 cues of impairment is not helpful to the trier of fact because the 21 cues are within the common knowledge of the jury—all 21 cues are things that a juror would know to look for when determining whether someone is driving under the influence. For instance, the cues include: bloodshot eyes, soiled clothing, alcohol containers, slurred speech, admission of drinking, and unusual odor. Moreover, Jones' proposed testimony that Trooper Neff claims to have observed only one of the 21 cues is likely to confuse the jury because it suggests that more than one cue is required to establish reasonable suspicion—and that is not the case. *See Vondrak v. City of Las Cruces*, 535 F.3d 1198, 1206 (10th Cir. 2008) (holding that officer had reasonable suspicion based on the driver's "admission to drinking one beer several hours earlier").[2] Thus, the Court excludes Jones' proposed testimony as to the NHTSA's cues of impairment.

*Second*, Jones' proposed testimony as to the average length of time that it takes to conduct a DUI investigation is irrelevant and is likely to confuse the jury. Jones fails to explain how the fact that it took Trooper Neff 8 minutes and 6 seconds to begin conducting field sobriety tests, as opposed to the average of 2 minutes and 11 seconds, tends to prove that Linin was unreasonably seized. In other words, there is no evidence that an above- or below-average length of detention before field sobriety are begun tends to prove or disprove that an officer lacked reasonable suspicion to conduct a DUI investigation. In sum, the fact that Trooper Neff took longer than average to conduct field sobriety tests is irrelevant to whether Trooper Neff had reasonable suspicion that Linin was driving under the influence, and therefore Jones' proposed

---

[2] In fact, Jones' Investigation Report suggests that he intends to testify that Trooper Neff acted unreasonably *because* he only observed one of the 21 cues of impairment: "I find that Trooper Neff continued with the DWI investigation improperly. Trooper Neff had only one observation of the twenty-one cues[.]"

5

testimony on this subject is excluded.

*Third*, Jones' proposed testimony as to whether Trooper Neff acted reasonably is impermissible because it is a legal conclusion on the ultimate issue of the case. To the extent that Linin claims that Jones is only testifying as to whether Trooper Neff complied with law enforcement standards, such testimony does not tend to prove or disprove that Trooper Neff complied with the Fourth Amendment and is likely to mislead the jury in deciding whether Linin's Fourth Amendment rights were violated. *See Marquez*, 399 F.3d at 1222. Accordingly, the Court excludes Jones' proposed testimony as to the reasonableness of Trooper Neff's actions and Trooper Neff's compliance with law enforcement standards.

### III. CONCLUSION AND ORDER

Accordingly, the Court GRANTS Defendant's Motion *in Limine* to Exclude Expert Testimony (ECF No. 41). It is hereby ordered that Travis Jones is PROHIBITED from offering expert testimony or opinions on the subject matter outlined in his Investigation Report.

DATED September 1, 2017.

_____
Judge Jill N. Parrish
United States District Judge