## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH

| | |
|---|---|
| REX LININ, an individual,<br><br>*Plaintiff*,<br><br>v.<br><br>TROOPER CHAMBERLIN NEFF, in his official and individual capacities,<br><br>*Defendant*. | **MEMORANDUM DECISION AND ORDER CLARIFYING THIS COURT'S AUGUST 2, 2016 MEMORANDUM DECISION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>Case No. 2:15-cv-298-JNP-PMW<br><br>Judge Jill N. Parrish<br>Magistrate Judge Paul M. Warner |

Plaintiff Rex Linin ("Linin") asserts that his constitutional rights were violated when Trooper Chamberlin Neff ("Trooper Neff") expanded the scope of a routine traffic stop to investigate Linin for driving under the influence. Linin alleges additional constitutional violations arising from his subsequent arrest for DUI and from Trooper Neff's impoundment and inventory search of his truck incident to that arrest. Linin seeks to vindicate his rights through claims brought pursuant to 42 U.S.C. § 1983.

Currently before the Court is Defendant's Motion *in Limine* for the Exclusion of Irrelevant and Unduly Prejudicial Evidence (ECF No. 42) and Defendant's Motion for Summary Judgment (ECF No. 54). Both motions rely on the Court's August 2, 2016 Memorandum Decision and Order (the "prior Order") in which the Court analyzed whether Trooper Neff was entitled to qualified immunity on summary judgment.

After reviewing the pending motions, it is apparent that the Court must clarify the prior Order. The briefing leading up to the prior Order analyzed the qualified immunity defense for

each of Trooper Neff's challenged actions as separate and discrete issues. That is, the parties did not engage in detailed analysis on how a genuine dispute of material fact surrounding events at the outset of Trooper Neff's encounter with Linin—such as whether Trooper Neff smelled alcohol—would impact the availability of qualified immunity. The Court therefore analyzed the availability of qualified immunity for each of Trooper Neff's challenged actions in isolation.

But the availability of qualified immunity for each of the challenged actions cannot be viewed in isolation. Put simply, the dispute of material facts concerning whether Trooper Neff reasonably believed that there was reasonable suspicion to conduct a DUI investigation renders qualified immunity on both of Linin's claims unavailable on summary judgment. Accordingly, Trooper Neff is potentially liable for all damages that naturally flow from the alleged false arrest and unlawful search. In sum, Trooper Neff is not entitled to qualified immunity on summary judgment on the false arrest or unlawful search and seizure claims due to genuine disputes of material fact, and he is potentially liable for the damages that naturally flow from both claims.

The Court clarifies its August 2, 2016 Order as set forth below. Because this Order moots the damages issues raised in Defendant's Motion for Summary Judgment (ECF No. 54) and Defendant's Motion *in Limine* for the Exclusion of Irrelevant and Unduly Prejudicial Evidence (ECF No. 42), the Court DENIES both motions.

I.      **BACKGROUND**

On December 16, 2014, at approximately 3:00 p.m., Linin was driving westbound on I-80 near Tooele, Utah. Linin, while driving in the right-hand lane, passed a parked emergency vehicle with flashing overhead emergency lights. Linin failed to move into the left-hand lane before passing the emergency vehicle, despite having the opportunity to do so. Trooper Neff, an enforcement officer with the Utah Highway Patrol ("UHP"), saw these events and pulled Linin

over for violating Utah Code § 41-6A-904(2), which makes it illegal to fail to slow down and move into the left-hand lane to yield the right lane to a stationary emergency vehicle displaying lights.

Upon approaching Linin's truck, Trooper Neff saw that Linin had a cracked windshield in violation of Utah Code § 41-6A-1635. Trooper Neff informed Linin of the reasons for the stop: (1) Linin failed to move into the left lane when he passed the stopped emergency vehicle, and (2) Linin had a cracked windshield. Trooper Neff did not observe any other violations or anything else in Linin's driving pattern that would justify a stop.

Trooper Neff claims that while he was speaking with Linin he smelled alcohol coming from Linin's truck. But Trooper Neff did not mention the issue at the time and instead asked Linin to come to the patrol vehicle. Linin walked to the patrol vehicle in a normal fashion and exhibited no signs of impairment. While Linin sat in the vehicle, Trooper Neff checked Linin's driver's license and registration and asked Linin a few questions. Linin's speech was not slurred, but Trooper Neff claims that it was slow and deliberate. During this time, another officer had a dog sniff around Linin's truck. The dog did not alert to the presence of drugs.

While in the patrol vehicle, Trooper Neff told Linin that he smelled alcohol coming from Linin and asked Linin if he had been drinking—Linin denied drinking. Trooper Neff also testified that Linin's eyes were watery and glassy, but Linin disputes this fact.

Trooper Neff then asked Linin to perform a series of field sobriety tests. Trooper Neff first administered the Horizontal Gaze Nystagmus Test on Linin. Linin visibly moved his head while attempting to perform the test. Trooper Neff claims that Linin exhibited six total clues of impairment, including a "lack of smooth pursuit," "nystagmus at maximum deviation," and "nystagmus prior to an onset of 45 degrees." But Linin presents expert testimony that Trooper

Neff improperly conducted the HGN test too quickly, did not perform the necessary number of passes of stimuli, and did not hold the stimuli in place long enough to establish nystagmus.

Trooper Neff then asked Linin to perform the nine-step walk and turn test. Prior to performing the test, Linin told Trooper Neff that he had a leg injury. Despite this, Trooper Neff asked Linin to perform the test. Trooper Neff claims that Linin demonstrated seven clues of impairment, including Linin's "inability to stand to the instructed position," and the fact that Linin "began the test early," "confused his left and right foot," "put his hands at the small of his back," "stepped off the line several times," "missed heel-to-toe several times," "performed an improper turn," and "drifted to the left." Linin contests these results and presents expert testimony that an individual with a leg injury is ineligible to perform the nine-step walk and turn test.

Following the nine-step walk and turn test, Trooper Neff invited Linin to sit on the bumper of the patrol vehicle because Linin was shaking. Linin claims that he was shaking because he "was so scared, just scared out of [his] mind."

Trooper Neff then had Linin perform the one-leg-stand test. Troop Neff claims that Linin displayed four clues of impairment, including the fact that Linin continued to shake, "raised his hands, hopped and swayed, [and] was unable to get past a four or five second count without putting his foot down." Linin performed the test on both his injured and uninjured legs. Linin also contests the use of the one-leg-stand test and presents expert testimony that an individual with a leg injury is ineligible to perform the test.

After administering the field sobriety tests, Trooper Neff asked Linin to blow into a portable breathalyzer. Linin declined to blow into the device, saying that his ex-wife, a lawyer, had warned him not to use a portable breathalyzer. Instead, Linin stated, "I'd rather take a blood

test."

At this point, Trooper Neff arrested Linin for DUI, handcuffed him, and placed him in the patrol vehicle. Following the arrest, Trooper Neff searched Linin's truck, impounded it, and inventoried its contents. During the inventory search, there were five officers at the scene, several of whom later left to conduct patrols in other areas.

While searching Linin's vehicle, Trooper Neff told the other officers, "[Now] that I got a DUI, [UHP administration] may get off my back." Trooper Neff also admits that he searched Linin's vehicle to find contraband. Specifically, Trooper Neff testified that he was looking for "[a]lcohol, drugs, anything that would be illegal." But there is no evidence that Trooper Neff found alcohol or contraband in Linin's truck. Trooper Neff did not testify that there was any other purpose for searching the truck.

Trooper Neff took Linin to the UHP Tooele office where Linin agreed to submit to a blood test. Another officer attempted to obtain a blood sample but was unable to successfully draw Linin's blood. The record does not provide any reason as to why the officer was unable to obtain a blood sample from Linin or why he was not taken to a medical facility to obtain a sample.

After the failed attempt to obtain a blood sample, Trooper Neff took Linin to the Tooele County Jail and booked him for DUI and failing to move over for an emergency vehicle. Linin claims that while at the Tooele County Jail, he took a breath test that showed a BAC of 0.00. Linin was released on bail several hours later.

Linin was charged with violations of Utah Code § 41-6A-904(2), failing to move over when approaching an emergency vehicle; Utah Code § 41-6A-502, driving under the influence of alcohol; and Utah Code § 41-6A-1635, obstructed visibility due to a broken window. Linin hired

an attorney to represent him on these charges. The charges against Linin were later dismissed.

Linin brought claims under 42 U.S.C. § 1983 against Trooper Neff and UHP for (1) false arrest, (2) unlawful search and seizure, and (3) unlawful policy, practice, and/or custom of UHP. The Court dismissed Linin's claims against the UHP on the basis of Eleventh Amendment sovereign immunity. On March 20, 2016, Trooper Neff filed a motion for summary judgment claiming that he was entitled to qualified immunity on the remaining claims.

On August 2, 2016, the Court issued a Memorandum Decision and Order Granting in Part and Denying in Part Defendant's Motion for Summary Judgment. In the Order, the Court held, in relevant part: (1) "[Trooper Neff] is not entitled to qualified immunity with regard to his reasonable suspicion determination and the expansion of the traffic stop's scope," and (2) "[Trooper Neff] is entitled to qualified immunity on his probable cause determination to arrest [Linin] for DUI as well as his actions in impounding and inventorying [Linin's vehicle]."

Trooper Neff filed two motions that rely on the Court's holding that Trooper Neff is "entitled to qualified immunity on his probable cause determination to arrest Mr. Linin for DUI as well as his actions in impounding and inventorying [Mr. Linin's] vehicle." The first motion is Defendant's Motion *in Limine* for Exclusion of Irrelevant and unduly Prejudicial Evidence (ECF No. 42), and the second motion is Defendant's Motion for Summary Judgment on Damages (ECF No. 54). In preparing for the motions hearing scheduled on these motions, the Court became aware that it must clarify its prior Order.

## II.    DISCUSSION

The Court, in its prior Order, analyzed the legal issues raised by Trooper Neff in isolation. As such, the Court did not consider the impact of an initial constitutional violation on Trooper Neff's qualified-immunity defense. Put another way, the Court assumed that Linin was not

unlawfully seized when it held that Trooper Neff was entitled to qualified immunity for his arrest of Linin and his decision to impound and inventory Linin's truck incident to that arrest. However, as set forth below, Trooper Neff is not entitled to summary judgment on the issues of qualified immunity on Linin's false arrest and unlawful search and seizure claims because there is a genuine dispute as to whether he reasonably believed that there was reasonable suspicion to expand the scope of the traffic stop to a DUI investigation.[1]

## A. Motion Standard

Under Federal Rule of Civil Procedure 56(a), summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A dispute is genuine only if "a reasonable jury could find in favor of the nonmoving party on the issue." *Macon v. United Parcel Serv., Inc.*, 743 F.3d 708, 712 (10th Cir. 2014). In making this determination, the Court views the evidence and draws reasonable inferences therefrom "in the light most favorable to the nonmoving party.'" *Id.* at 712–13 (quoting *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1225 (10th Cir. 2000)).

However, when qualified immunity is presented at the summary judgment phase, the Court must employ a different paradigm: "When a defendant asserts qualified immunity at summary judgment, the burden shifts to the plaintiff, who must clear two hurdles in order to defeat the defendant's motion." *Riggins v. Goodman*, 572 F.3d 1101, 1107 (10th Cir. 2009). The plaintiff must show: "(1) a violation of a constitutional right; and (2) that the constitutional right

---

[1] Here, there are disputed factual issues—whether Trooper Neff smelled alcohol and whether Linin's eyes were watery or glassy—that must be resolved by a jury before the Court can rule on qualified immunity. After a jury resolves these issues, Trooper Neff can raise qualified immunity in a Rule 50(a) motion at the close of evidence. *See Tortu v. Las Vegas Metro. Police Dep't*, 556 F.3d 1075, 1083 (9th Cir. 2009) ("When a qualified immunity claim cannot be resolved before trial due to a factual conflict, it is a litigant's responsibility to preserve the legal issues for determination after the jury resolves the factual conflict."). As such, this may be a case where a special verdict on discrete factual issues—whether Trooper Neff smelled alcohol and whether Linin's eyes were watery or glassy—is warranted to resolve Trooper Neff's qualified immunity claim.

was clearly established at the time of the violation." *Felders ex rel. Smedley v. Malcom*, 755 F.3d 870, 877 (10th Cir. 2014). The Court has "discretion to decide 'which of the two prongs . . . should be addressed first in light of the circumstances in the particular case at hand.'" *Courtney v. Oklahoma ex rel. Dep't of Pub. Safety*, 722 F.3d 1216, 1222 (10th Cir. 2013) (quoting *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)).

In determining whether the plaintiff has met this burden, "courts are required to view the facts and draw reasonable inferences 'in the light most favorable to the party opposing the [summary judgment] motion.' In qualified immunity cases, this usually means adopting . . . the plaintiff's version of the facts." *Scott v. Harris*, 550 U.S. 372, 378 (2007) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (per curiam)); *see also Riggins*, 572 F.3d at 1107 (noting that, when addressing the legal inquiry posed by the qualified immunity context, the court "accept[s] the facts as the plaintiff alleges them"). However,

> a plaintiff's version of the facts must find support in the record . . . . "As with any motion for summary judgment, '[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts.'"

*Thomson v. Salt Lake Cty.*, 584 F.3d 1304, 1312 (10th Cir. 2009) (quoting *York v. City of Las Cruces*, 523 F.3d 1205, 1210 (10th Cir. 2008)); *see also Scott*, 550 U.S. at 380–81 (holding that the lower court "should have viewed the facts in the light depicted by the videotape" rather than relying on Respondent's version of events because "Respondent's version of events is so utterly discredited by the record that no reasonable jury could have believed him"). Thus, at this stage in the proceedings,

> the objective is *not* to determine whether a plaintiff survives summary judgment because plaintiff's evidence raises material issues that warrant resolution by a jury. Instead, the principal purpose is to determine whether plaintiff's factual allegations are sufficiently grounded in the record such that they may permissibly comprise the universe of facts that will serve as the foundation for answering the *legal* question before the court.

*Cox v. Glanz*, 800 F.3d 1231, 1243 (10th Cir. 2015).

As to the second prong, a constitutional right is clearly established if "'[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Quinn v. Young*, 780 F.3d 998, 1004–05 (10th Cir. 2015) (quoting *Wilson v. Montano*, 715 F.3d 847, 852 (10th Cir. 2013)). "A plaintiff may satisfy this standard by identifying an on-point Supreme Court or published Tenth Circuit decision." *Id.* at 1005. Or "the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Id.* (quoting *Weise v. Casper*, 593 F.3d 1163, 1167 (10th Cir. 2010)). "[T]he plaintiff need not locate a *perfectly* on-point case. . . . '[O]fficials can still be on notice that their conduct violates established law even in novel factual circumstances.'" *Id.* (quoting *Hope v. Pelzer*, 536 U.S. 730, 741 (2002)). But the Supreme Court has cautioned courts "not to define clearly established law at a high level of generality." *Id.* (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)); *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014) ("[C]ourts should define the 'clearly established' right at issue on the basis of the 'specific context of the case.'" (citation omitted)).

If the plaintiff meets the two-part burden by demonstrating the violation of a clearly established constitutional right, the burden then shifts to the defendant "to show that there are no disputes of material fact as to whether his conduct was objectively reasonable in light of clearly established law and the information known to the defendant at the time." *Felders*, 755 F.3d at 877 (quoting *Mick v. Brewer*, 76 F.3d 1127, 1134 (10th Cir. 1996)). Unlike the Court's evaluation of the plaintiff's burden, the evaluation of the defendant's burden is made under the traditional summary judgment standard. *See id.*; *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001) ("If the plaintiff successfully establishes the violation of a clearly established right, the burden shifts

to the defendant, who must prove that 'there are no genuine issues of material fact and that he or she is entitled to judgment as a matter of law.'" (citations omitted)); *Thomson*, 584 F.3d at 1326 (Holmes, J., concurring) ("It is only *after* plaintiff crosses the legal hurdle comprised of his or her two-part burden of demonstrating the violation of a constitutional right that was clearly established, that courts should be concerned with the *true* factual landscape—as opposed to the factual landscape as plaintiff would have it. Based upon that true factual landscape, courts should determine whether defendant can carry the traditional summary judgment burden of establishing that there are no genuine issues of material fact for jury resolution and that defendant is entitled to judgment as a matter of law.").

## B. Claims Against Trooper Neff in His Individual Capacity

The Court first considers Linin's claims against Trooper Neff in his individual capacity. Linin asserts two claims under § 1983 against Trooper Neff in his individual capacity: (1) false arrest, and (2) unlawful search and seizure. Under these claims, Linin challenges his arrest for DUI and the subsequent impoundment and search of his truck. The parties' arguments with respect to each claim are evaluated below.

### 1) False Arrest

Trooper Neff claims that he is entitled to qualified immunity on Linin's false arrest claim. Linin asserts that there is a genuine dispute as to whether Trooper Neff reasonably believed that there was reasonable suspicion to expand the scope of the traffic stop to a DUI investigation and whether Trooper Neff reasonably believed that there was probable cause to arrest Linin for DUI.

#### a. Reasonable Suspicion to Expand the Scope of the Traffic Stop

Linin claims that Trooper Neff is not entitled to qualified immunity because Trooper Neff did not reasonably believe that there was reasonable suspicion to expand the scope of the traffic stop to a DUI investigation. "An investigative detention is a 'Fourth Amendment seizure[] of

limited scope and duration requiring reasonable suspicion of criminal activity.'" *Romero v. Story*, 672 F.3d 880, 886 (10th Cir. 2012) (quoting *Lundstrom v. Romero*, 616 F.3d 1108, 1120 (10th Cir. 2010)). It is clearly established that a police officer must have reasonable suspicion in order to expand the scope of a traffic stop to conduct field sobriety tests. *Vondrak v. City of Las Cruces*, 535 F.3d 1198, 1206 (10th Cir. 2008); *Wilder v. Turner*, 490 F.3d 810, 815 (10th Cir. 2007).

"Under the reasonable suspicion standard, a police officer 'must have a particularized and objective basis for suspecting the particular person stopped of criminal activity.'" *Vondrak*, 535 F.3d at 1206 (quoting *United States v. Cortez*, 449 U.S. 411, 417–18 (1981)). This standard is based on the "'totality of the circumstances,' and 'officers [may] draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person.'" *Id.* at 1206–07 (quoting *United States v. Arvizu*, 534 U.S. 266, 273 (2002)).

In the DUI context, an officer has reasonable suspicion to conduct a DUI investigation based upon the smell of alcohol alone. *See id.* at 1207 (citing *Miller v. Harget*, 458 F.3d 1251, 1259 (11th Cir. 2006)) (holding that officer had reasonable suspicion to detain driver and conduct a DUI investigation when officer "smelled alcohol coming from [driver's vehicle]"); *United States v. Neumann*, 183 F.3d 753, 756 (8th Cir. 1999) ("The detection of alcohol on [driver's] breath provided [the officer] with a reasonable suspicion to further detain [driver] and expand the scope of the investigation."). In the context of a § 1983 action, "the officer 'is entitled to qualified immunity if a reasonable officer could have believed that [reasonable suspicion] existed to . . . detain the plaintiff.'" *Vondrak*, 535 F.3d at 1207 (quoting *Cortez v. McCauley*, 478 F.3d 1108, 1120 (10th Cir. 2007)).

Here, Linin argues that Trooper Neff violated his clearly established rights by expanding the scope of the traffic stop without reasonable suspicion. But Trooper Neff claims that he reasonably believed that there was reasonable suspicion to investigate Linin for DUI because Linin's eyes were watery and glassy and he smelled of alcohol. Linin disputes these claims and maintains that he did not consume alcohol prior to the arrest.

In determining whether Linin has met his two-part burden under the qualified immunity standard, the Court must "adopt[] . . . the plaintiff's version of the facts" unless his "version of events is so utterly discredited by the record that no reasonable jury could [believe] him." *Scott*, 550 U.S. at 378, 380. But nothing in the record "utterly discredits" Linin's factual assertions. In fact, the record supports them. The dash cam video shows no signs of impairment as Linin conversed with Trooper Neff and then followed him to the patrol vehicle. And the video is of little help in determining whether Trooper Neff smelled alcohol. Further, it is impossible to tell from the video whether Linin's eyes were watery and glassy. Indeed, Trooper Neff's testimony is the only evidence that contradicts Linin's version of events. Because nothing in the record "utterly discredits" Linin's factual assertions, *see id.*, the Court must "accept the facts as [Linin] alleges them," *see Riggins*, 572 F.3d at 1107.

Setting these facts aside and accepting Linin's assertion that he had not been drinking, the only fact on which Trooper Neff relies in support of reasonable suspicion is his allegation of Linin's "slow, deliberate speech." But based on Tenth Circuit precedent, an individual's slow and deliberate speech is not enough by itself to give rise to reasonable suspicion. In *Vondrak v. City of Las Cruces*, 535 F.3d 1198 (10th Cir. 2008), the Tenth Circuit held that it was a "close case" when the police officer's "*only* factual basis for conducting the field sobriety tests was [the driver's] admission to drinking one beer several hours earlier." *Id.* at 1207 (emphasis added). In

another case, the Tenth Circuit held that a police officer had reasonable suspicion when the plaintiff had "*unusually* slow and deliberate speech," along with other indicia of alcohol consumption. *Wilder*, 490 F.3d at 815 (emphasis added). If an admission to drinking taken by itself barely meets the threshold for reasonable suspicion, *see Vondrak*, 535 F.3d at 1207, slow and deliberate speech taken by itself certainly falls below the constitutional limit.

Moreover, the dash cam video undermines Trooper Neff's assertion. After viewing the video, the Court finds that Linin's speech was not so "unusually slow and deliberate" as to indicate that Linin was under the influence of alcohol. *See Wilder*, 490 F.3d at 815. Indeed, "some facts must be outrightly dismissed as so innocent or susceptible to varying interpretations as to be innocuous." *U.S. v. Simpson*, 609 F.3d 1140, 1147 (10th Cir. 2010) (citations omitted). Accordingly, the Court finds that "a reasonable officer could [not] have believed that [reasonable suspicion] existed to . . . detain" Linin to investigate for DUI based on his speech alone. *See Vondrak*, 535 F.3d at 1207.

Thus, accepting Linin's version of the facts, he has met his two-part burden of showing (1) a violation of a constitutional right that was (2) clearly established at the time of the violation. *See Vondrak*, 535 F.3d at 1206–07 (holding that a police officer must have reasonable suspicion in order to expand the scope of a traffic stop to conduct field sobriety tests). The burden therefore shifts to Trooper Neff to show "that there are no disputes of material fact and that he . . . is entitled to judgment as a matter of law." *Medina*, 252 F.3d at 1128 (citations omitted).

Trooper Neff has not met his burden under the traditional summary judgment standard. The facts that he claims give rise to reasonable suspicion—Linin's watery and glassy eyes and the odor of alcohol—are in dispute. As noted above, nothing in the record "utterly discredits" Linin's factual assertions. And these facts are material to determining whether Trooper Neff had

reasonable suspicion to detain Linin. Without them, Trooper Neff lacked reasonable suspicion to conduct field sobriety tests on Linin and thus would have violated Linin's clearly established Fourth Amendment right by extending the scope of the detention.

Trooper Neff argues that such disputes are not enough to overcome qualified immunity. Trooper Neff claims, citing *Stonecipher v. Valles*, 759 F.3d 1134, 1142 (10th Cir. 2014), that "the burden is on the plaintiff to 'make a substantial showing of deliberate falsehood or reckless disregard for truth' by the officer seeking probable cause." (quoting *Snell v. Tunnell*, 920 F.2d 673, 698 (10th Cir. 1990). Specifically, he argues that there cannot be a dispute of material fact here because Linin "has offered no evidence of deliberate falsehood in [Trooper] Neff's assertion that he detected the odor of alcohol." But *Stonecipher* is not on point. Notably, the language Trooper Neff cites from *Stonecipher* concerned a question of whether an officer obtained an invalid search warrant by misrepresenting or omitting material facts to a magistrate judge. *Id.* *Stonecipher*'s "substantial showing" standard is simply inapplicable to the case at hand.

Furthermore, the facts do give rise to a suggestion of deliberate falsehood in Trooper Neff's assertion that he smelled alcohol. Although Trooper Neff alleges that he smelled alcohol, he did not confront Linin about the smell of alcohol at the beginning of the traffic stop. Rather, Trooper Neff waited until after he had verified Linin's driver's license and registration and had a drug dog sniff around Linin's vehicle before he announced that he smelled alcohol. And one is left to wonder how Trooper Neff smelled alcohol when there is no evidence that any alcohol was found in Linin's truck and the breathalyzer test Linin took at the Tooele County Jail came back with a 0.00 BAC.

It is also curious that Trooper Neff did not attempt to obtain BAC results from Linin via a blood test until *after* he searched Linin's truck. At the beginning of the search, there were five

officers on the scene, several of whom later left to conduct patrols in other areas and who likely could have taken Linin to the station to obtain BAC results sooner. Although the search was not particularly lengthy, the delays in asking Linin whether he had been drinking and in obtaining BAC results further bolsters Linin's claim that he had not consumed alcohol. Coupled with Trooper Neff's statement to the other officers on the scene that UHP administration may get off his back now that he had arrested someone for DUI, these facts cast a shadow on the veracity of Trooper Neff's allegations.

And finally, in evaluating whether there was reasonable suspicion to justify expanding the scope of the traffic stop, the Court must consider the totality of the circumstances. *See Arvizu*, 534 U.S. at 274. Additional facts to be considered include the fact that Linin's driving pattern was not erratic and that he showed no signs of impairment on the dash cam video. Moreover, Linin's speech was not slurred and he was able to walk to Trooper Neff's patrol vehicle without difficulty.

Because there are genuine disputes of material fact surrounding whether Trooper Neff reasonably believed that there was reasonable suspicion to conduct a DUI investigation, the Court cannot grant Trooper Neff qualified immunity on Linin's false arrest claim. *See Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1313 (10th Cir. 2002) (holding that a court cannot "grant a defendant official qualified immunity if material facts are in dispute"). These "factual differences . . . render it impossible to make an initial determination as to whether [Trooper Neff] violated [Linin's] constitutional right to be free from unreasonable seizure." *See id.* Accordingly, a jury must resolve these disputed facts and the Court must deny qualified immunity with regard to Linin's false arrest claim at the summary judgment phase.

### b. Probable Cause to Arrest for DUI

If Trooper Neff did not reasonably believe that there was reasonable suspicion to expand the scope of the stop to a DUI investigation, then he lacked probable cause to arrest Linin. It is well established that if police discover information during an illegal search or seizure that establishes probable cause to arrest, the arrest is still unlawful. *Wong Sun v. United States*, 371 U.S. 471, 484-85 (1963) ("[T]estimony as to matters observed during an unlawful invasion has been excluded in order to enforce the basic constitutional policies."). In other words, a search or seizure that is unlawful at is inception may not be validated by what it turns up. *Id.* at 484; *see also United States v. King*, 990 F.2d 1552, 1564 (10th Cir. 1993) (holding that drugs discarded from defendant's car were tainted because the defendant discarded the drugs during the course of an unlawful seizure). The Court will, however, consider whether Trooper Neff would be entitled to qualified immunity on the false arrest claim if he prevails on his claim that he reasonably believed there was reasonable suspicion to expand the scope of the traffic stop to a DUI investigation.

A police officer violates an arrestee's clearly established Fourth Amendment rights if the officer "makes a warrantless arrest without probable cause." *Olsen*, 312 F.3d at 1312. Probable cause to arrest exists "only when the facts and circumstances within the officers' knowledge, and of which they have reasonably trustworthy information, are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed." *Cortez*, 478 F.3d at 1116 (quoting *United States v. Valenzuela*, 365 F.3d 892, 896 (10th Cir. 2004)).

"In the context of a qualified immunity defense on an unlawful . . . arrest claim, [the Tenth Circuit] ascertain[s] whether a defendant violated clearly established law 'by asking whether there was "arguable probable cause"' for the challenged conduct." *Stonecipher*, 759 F.3d

at 1141. "Arguable probable cause" exists when "the officers' conclusions rest on an objectively reasonable, even if mistaken, belief that probable cause exists." *Id.* Thus, an officer "is entitled to qualified immunity if a reasonable officer could have believed that probable cause existed to arrest or detain the plaintiff." *Id.* (quoting *Cortez*, 478 F.3d at 1120).

Here, if Trooper Neff did not reasonably believe that there was reasonable suspicion to conduct a DUI investigation, he could not have relied on the fruits of the unlawful detention to establish probable cause. That is, Trooper Neff could not rely on Linin's poor performance on the field sobriety test and Linin's refusal to take a breathalyzer test to establish probable cause. Without this evidence, the only facts supporting Linin's DUI arrest are the disputed facts discussed earlier—the odor of alcohol and Linin's watery and glassy eyes. But these facts, even if true, do not give rise to probable cause to arrest for DUI. *See Vondrak*, 535 F.3d at 1206. Thus, Trooper Neff is not entitled to qualified immunity on Linin's false arrest claim because there is a genuine dispute as to whether Trooper Neff reasonably believed that there was reasonable suspicion to conduct the DUI investigation that gave rise to facts on which he relies to establish probable cause for Linin's arrest.

However, *assuming* that Trooper Neff reasonably believed that there was reasonable suspicion to expand the scope of the stop to a DUI investigation, Trooper Neff would have had arguable probable cause to arrest Linin for DUI. Assuming these facts, Trooper Neff could rely on Linin's poor performance on the field sobriety test and his refusal to take a breathalyzer to establish probable cause to arrest Linin for DUI.

Linin disputes whether Trooper Neff administered the field sobriety tests correctly. Linin therefore asserts that probable cause could be based only on Linin's refusal to blow into the portable breathalyzer, and that an individual's refusal to blow into the portable breathalyzer

alone, especially when he offers to submit to a blood test instead, is insufficient to give rise to probable cause.

Linin also argues that this Court should not consider his poor performance on the field sobriety tests because Trooper Neff improperly administered them. Specifically, Linin presents expert testimony showing that Trooper Neff did not perform the necessary number of passes of stimuli and did not hold the stimuli in place long enough to establish nystagmus on the HGN test. Linin's expert further asserts that an individual with a bad leg, such as Linin, is ineligible to perform the nine-step walk and turn and one-leg stand tests.

Whether Trooper Neff properly administered the field sobriety tests is a close call. But regardless of whether Trooper Neff properly administered the field sobriety tests, Linin has failed to meet his burden to show that a probable cause determination based on flawed field sobriety tests violates a clearly established constitutional right. Linin cites to a handful of cases from courts outside of the Tenth Circuit in arguing that probable cause can only be based on "reasonably trustworthy information" and that field sobriety test "evidence is only a reasonably trustworthy indication of intoxication if the [tests] have been administered correctly." Yet these cases do not establish that "the clearly established weight of authority from other courts [find] the law to be as [he] maintains." *Quinn*, 780 F.3d at 1005. Further, Linin does not cite any case establishing that field sobriety tests cannot be used to establish probable cause when an individual alleges that he or she has a "bad leg" or other disability. Thus, if Trooper Neff reasonably believed that there was reasonable suspicion to expand the scope of the detention, Linin has failed to meet his burden of showing that Trooper Neff violated a constitutional right that was clearly established at the time of Linin's arrest.

Even if the Court considers "the factual landscape as [Linin] would have it," *see*

*Thomson*, 584 F.3d at 1325–27 (Holmes, J., concurring), and adopts Linin's assertion that the field sobriety tests should not be considered because Trooper Neff administered them improperly, Linin still has not met his burden under the qualified immunity standard because his refusal to submit to the breathalyzer test arguably gives rise to probable cause.

Linin contends that the facts do not establish a refusal on his part to blow into the portable breathalyzer. Rather, they establish only his "preference for a blood test over a breath test." Linin also argues that Trooper Neff "presents no cases where a court has found [that] requesting a blood alcohol test as an alternative to a breath test solely establishes probable cause for an arrest." Linin further contends that his "case is distinguishable from cases wherein suspects refused to participate in a DUI investigation because Linin's willingness to provide a blood sample dispels any motivation by Linin to conceal incriminating evidence."

But it is not Trooper Neff's burden to present a case showing that a preference for blood tests is insufficient to establish probable cause. Rather, to show a clearly established constitutional right, Linin—not Trooper Neff—must point to "an on-point Supreme Court or published Tenth Circuit decision" supporting his arguments. *Quinn*, 780 F.3d at 1005. Or Linin can point to "the clearly established weight of authority from other courts [finding] the law to be as [he] maintains." *Id.*

While Linin distinguishes cases cited by Trooper Neff holding that refusal to blow in a breathalyzer along with other indicia of alcohol consumption establish probable cause, *see Wilder*, 490 F.3d at 815; *Summers v. Utah*, 927 F.2d 1165, 1166 (10th Cir. 1991), Linin has not pointed to any case law—controlling or persuasive—clearly establishing that a preference for a blood test over a breathalyzer is an insufficient fact by itself to give rise to probable cause.

"In order '[f]or a constitutional right to be clearly established, the contours of the right

must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Quinn*, 780 F.3d at 1004–05 (quoting *Wilson*, 715 F.3d at 852). And the current contours of the law on an individual's refusal to take a breathalyzer test and preference for a blood test are such that "any constitutional violation would not have been apparent based on the clearly established law existing at that time." *Id.* at 1007. In fact, current Tenth Circuit precedent relies on case law that bolsters Trooper Neff's arrest of Linin following his refusal to take a breathalyzer test: "[P]robable cause developed, justifying [the plaintiff's] arrest, because [the plaintiff] refused to take a breathalyzer test." *Miller*, 458 F.3d at 1259–60; *see also Wilder*, 490 F.3d at 815 (holding that "[a] reasonable officer . . . could view Plaintiff's refusal to submit to a field sobriety test as indicative of an intent to conceal evidence of guilt"). And under Utah law, "A person who has been requested . . . to submit to a chemical test or tests of the person's breath, blood, or urine, or oral fluids may *not* select the test or tests to be administered." Utah Code § 41-6a-520(1)(d)(i) (emphasis added).

In short, the clearly established law existing at the time of Linin's arrest for DUI did not give Trooper Neff fair warning that he lacked probable cause to arrest Linin based on his refusal to take a breathalyzer test or on his poor performance on the field sobriety tests. Because Linin has not identified any clearly established law indicating otherwise, Trooper Neff would be entitled to qualified immunity on the false arrest claim *if he prevails on his claim that he reasonably believed there was reasonable suspicion to conduct a DUI investigation*. In other words, assuming that Trooper Neff lawfully expand the scope of the traffic stop to a DUI investigation, he would have had sufficient facts to justify Linin's DUI arrest.

### C.    Impound and Inventory of Linin's Vehicle

Trooper Neff contends that he is entitled to qualified immunity for impounding and inventorying Linin's truck following Linin's DUI arrest. But Linin argues that Trooper Neff

violated his clearly established rights by impounding his truck in violation of state law and conducting an inventory search as a pretext for discovering contraband. As mentioned above, the Court has not previously considered the impact of an initial constitutional violation on the legality of Trooper Neff's decision to impound and inventory Linin's vehicle.

### 1) Impoundment of Linin's Vehicle

Linin first argues that Trooper Neff violated clearly established Fourth Amendment rights when he impounded Linin's truck in violation of state law. Specifically, Linin argues that because his arrest was unlawful, the subsequent impoundment of his truck incident to that arrest was unconstitutional. Thus, the legality of the search and impoundment turns on the legality of Linin's arrest, which turns on whether Trooper Neff reasonably believed that there was reasonable suspicion to conduct a DUI investigation.

Officers may impound a vehicle without a warrant if they are acting pursuant to "specific state . . . motor vehicle laws." *United States v. Hannum*, 55 F. App'x 872, 874 (10th Cir. 2003); *see also United States v. Haro-Salcedo*, 107 F.3d 769, 771 (10th Cir. 1997). Under Utah Code § 41-6a-527, an officer may impound a vehicle if the operator of the vehicle is arrested for DUI in violation of Utah Code § 41-6A-502. Thus, if Linin's arrest proves to be unlawful, then Trooper Neff could not have lawfully impounded and inventoried Linin's truck under Utah law. Accordingly, Trooper Neff is not entitled to summary judgment on his qualified immunity defense to Linin's unlawful search and seizure claim.

### 2) Inventory Search of Linin's Vehicle

Linin also argues that, even if his arrest was lawful, Trooper Neff violated his clearly established Fourth Amendment rights by conducting an inventory search as a pretext for discovering contraband. Trooper Neff argues that the inventory search was lawful, despite his

desire to find contraband, because he complied with department policy, which requires that officers conduct an inventory search before impounding a vehicle.

"An inventory search [that is] conducted as part of regular procedures, and for administrative rather than investigatory purposes, does not require a warrant." *United States v. Edwards*, 632 F.3d 633, 644 (10th Cir. 2001). A purported inventory search violates the Fourth Amendment if it is carried out "in bad faith or for the sole purpose of investigation." *Colorado v. Bertine*, 479 U.S. 376, 372 (1987); *see also South Dakota v. Opperman*, 428 U.S. 364, 376 (1976) ("[T]here is no suggestion whatever that this [inventory search] . . . was a pretext concealing an investigatory police motive."). The Tenth Circuit has acknowledged this as well: "To be justified as an inventory search . . . the search cannot be investigatory in nature but must instead be used only as a tool to record the defendant's belongings to protect the police from potential liability." *Edwards*, 632 F.3d at 644 (citing *Opperman*, 428 U.S. at 376); *see also United States v. Haro-Salcedo*, 107 F.3d 769, 772-73 (10th Cir. 1997) ("An inventory search must not be a ruse for a general rummaging in order to discover incriminating evidence . . . ."). However, an inventory search "may be justified by a legitimate inventory purpose despite an officer's subjective desire to uncover criminal evidence." *United States v. Cecala*, No. 99-4049, 2000 U.S. App. LEXIS 384, *5-7 (10th Cir. 2000) (holding that officer conducted a lawful inventory search, despite officer's belief that the vehicle may contain contraband, because "the need for an inventory existed to protect both the property and the police from a claim of loss or theft").[2]

---

[2] Other circuits addressing this issue have reached similar conclusions. *See, e.g.*, *United States v. Frank*, 864 F.2d 992, 1001 (3d Cir. 1988) ("The mere fact that an inventory search may also have an investigatory purpose does not, however, invalidate it."); *United States v. Judge*, 864 F.2d 1144, 1146-47 (5th Cir. 1989) (upholding decision to impound and inventory where decisions "could have legitimately had an administrative purpose"); *United States v. Lumpkin*, 159 F.3d 983, 987 (6th Cir. 1998) ("However, the fact that an officer suspects that contraband may be found does not defeat an otherwise proper inventory search."); *United States v. Lewis*, 3 F.3d 252, 254 (8th Cir. 1993) ("The presence of an investigative motive, however, does not invalidate an otherwise valid inventory

Linin does not argue that Trooper Neff failed to comply with department policy, and assuming that Linin's arrest was lawful, Trooper Neff followed the Utah Department of Public Safety's Policy Manual.[3] Linin does, however, argue that Trooper Neff's conducted the search as a pretext for discovering contraband (*i.e.*, Trooper Neff conducted the inventory search solely for the purpose of investigation).

While some of the circumstances suggest that Trooper Neff inventoried Linin's truck in the hopes of finding contraband, there is also evidence that Trooper Neff acted in furtherance of an administrative purpose. Assuming that Linin's arrest was lawful, Trooper Neff was required to inventory Linin's truck pursuant to the Utah Department of Safety Policy Manual. While Trooper Neff testified that his purpose in carrying out the inventory search was to "look[] for contraband," the Court can infer that he carried out the inventory search, in part, to comply with department policy, which requires that officers carry out an inventory search before impounding a vehicle.

In other words, the search was "justified by a legitimate inventory purpose," despite Trooper Neff's desire to find contraband. *See Cecala*, 2000 U.S. App. LEXIS 384, at *5-6. At the very least, Trooper Neff's decision to inventory Linin's truck could have legitimately had an administrative purpose. *See United States v. Bowhay*, 992 F.2d 229, 231 (9th Cir. 1993) ("When

---

search."); *United States v. Bowhay*, 992 F.2d 229, 231 (9th Cir. 1993) ("When the police conduct would have been the same regardless of the officer's subjective state of mind, no purpose is served by attempting to tease out the officer's 'true' motivation. Penalizing officers who are candid enough to admit that they hope to find evidence of a crime can only encourage obfuscation and dishonesty, without protecting reasonable expectations of privacy."); *United States v. Roberson*, 897 F.2d 1092, 1096 (11th Cir. 1990) (noting that "the mere expectation of uncovering evidence will not vitiate an otherwise valid inventory search" (citation omitted)).

[3] Section 704.5 of the Utah Department of Safety Policy manual provides that "[a]ll property in a stored or impounded vehicle . . . shall be inventoried and listed on the Vehicle Impoundment Report Form. This includes the trunk and any compartments or containers, even if closed and/or locked. Members conducting inventories should be as thorough and as accurate as practical in preparing an itemized inventory. These inventory procedures are for the purpose of protecting an owner's property while in police custody, to provide for the safety of others, and to protect the Department against fraudulent claims of lost, stolen or damaged property." Trooper Neff complied with this policy: he searched the interior of Linin's truck and identified the items found.

the police conduct would have been the same regardless of the officer's subjective state of mind, no purpose is served by attempting to tease out the officer's 'true' motivation. Penalizing officers who are candid enough to admit that they hope to find evidence of a crime can only encourage obfuscation and dishonesty, without protecting reasonable expectations of privacy."). Thus, assuming that Linin's arrest was lawful, Trooper Neff is entitled to qualified immunity on Linin's unlawful search and seizure claim.

### D. Claims Against Trooper Neff in His Official Capacity

The Court's holding as it relates to Linin's claims against Trooper Neff in his official capacity remains unchanged. Trooper Neff argued that he is entitled to sovereign immunity under the Eleventh Amendment, and Linin did not contest Trooper Neff's argument.

Under the Eleventh Amendment, "States may not be sued in federal court unless they consent to it in unequivocal terms or unless Congress, pursuant to a valid exercise of power, unequivocally expresses its intent to abrogate the immunity." *Green v. Mansour*, 474 U.S. 64, 68 (1985). "This prohibition encompasses suits against state agencies," as well as "[s]uits against state officials acting in their official capacities." *Muscogee (Creek) Nation v. Okla. Tax Comm'n*, 611 F.3d 1222, 1227 (10th Cir. 2010); *see also Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) ("[A] suit against a state official in his or her official capacity . . . is no different from a suit against the State itself."). "Because § 1983 does not abrogate a state's [or state official's] sovereign immunity," and because Utah has not consented to Linin's suit against Trooper Neff in his official capacity, sovereign immunity bars Linin's claims against Trooper Neff in his official capacity. *See Muscogee (Creek) Nation*, 611 F.3d at 1227. The Court therefore grants summary judgment in favor of Trooper Neff on Linin's claims against Trooper Neff in his official capacity.

## III.    CONCLUSION AND ORDER

Based on the foregoing, the Court CLARIFIES its August 2, 2016 Order and hereby GRANTS IN PART and DENIES IN PART Defendant's Motion for Summary Judgment (ECF No. 21). Trooper Neff is not entitled to qualified immunity at summary judgment with respect to Linin's false arrest or unlawful search and seizure claims brought against Trooper Neff in his individual capacity. However, the Court grants summary judgment in favor of Trooper Neff on Plaintiff's claims against Trooper Neff in his official capacity. Moreover, because this Order moots Defendant's Motion for Summary Judgment on Damages (ECF No. 54) and Defendant's Motion *in Limine* for the Exclusion of Irrelevant and Unduly Prejudicial Evidence (ECF No. 42), the Court DENIES both motions.


DATED September 6, 2017.

                                                              _____
                                                              Judge Jill N. Parrish
                                                              United States District Judge