FILED
2021 MAR 18 PM 12:22
CLERK
U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| REX LININ,<br><br>         Plaintiff,<br><br>v.<br><br>TROOPER CHAMBERLIN NEFF,<br><br>         Defendant. | **ORDER GRANTING, DENYING, GRANTING IN PART, AND DENYING IN PART PARTIES' MOTIONS IN LIMINE**<br><br>Case No. 2:15-cv-298-JNP<br><br>District Judge Jill N. Parrish |

## INTRODUCTION

Before the court are Motions in Limine filed by Defendant Trooper Chamberlin Neff ("Neff") (ECF Nos. 99–103) and Plaintiff Rex Linin ("Linin") (ECF Nos. 105–110). Each of the motions regards the admissibility of evidence at the upcoming trial in this matter. The court considers each in turn below.

## BACKGROUND

On December 16, 2014, at approximately 3:00 p.m., Linin was driving westbound on I-80 near Tooele, Utah. Linin, while driving in the right-hand lane, passed a parked emergency vehicle with flashing overhead emergency lights. Linin failed to move into the left-hand lane before passing the emergency vehicle, despite having the opportunity to do so. Neff, an enforcement officer with the Utah Highway Patrol ("UHP"), saw these events and pulled Linin over for violating Utah Code § 41-6A-904(2), which makes it illegal to fail to slow down and move into the left-hand lane to yield the right lane to a stationary emergency vehicle displaying lights.

Upon approaching Linin's truck, Neff saw that Linin had a cracked windshield in violation of Utah Code § 41-6A-1635. Neff informed Linin of the reasons for the stop: (1) Linin failed to move into the left lane when he passed the stopped emergency vehicle, and (2) Linin had a cracked windshield. Neff did not observe any other violations or anything else in Linin's driving pattern that would justify a stop.

Neff claims that while he was speaking with Linin he smelled alcohol coming from Linin's truck. But Neff did not mention the issue at the time and instead asked Linin to come to the patrol vehicle. Linin walked to the patrol vehicle in a normal fashion and exhibited no signs of impairment. While Linin sat in the vehicle, Neff checked Linin's driver's license and registration and asked Linin a few questions. Linin's speech was not slurred, but Neff claims that it was slow and deliberate. During this time, another officer had a dog sniff around Linin's truck. The dog did not alert to the presence of drugs.

While in the patrol vehicle, Neff told Linin that he smelled alcohol coming from Linin and asked Linin if he had been drinking—Linin denied drinking. Neff also testified that Linin's eyes were watery and glassy, but Linin disputes this fact.

Neff then asked Linin to perform a series of field sobriety tests. Neff first administered the Horizontal Gaze Nystagmus Test on Linin. Linin visibly moved his head while attempting to perform the test. Neff claims that Linin exhibited six total clues of impairment, including a "lack of smooth pursuit," "nystagmus at maximum deviation," and "nystagmus prior to an onset of 45 degrees." Neff then asked Linin to perform the nine-step walk and turn test. Prior to performing the test, Linin told Neff that he had a leg injury. Despite this, Neff asked Linin to perform the test. Neff claims that Linin demonstrated seven clues of impairment, including Linin's "inability to stand to the instructed position," and the fact that Linin "began the test early," "confused his left

2

and right foot," "put his hands at the small of his back," "stepped off the line several times," "missed heel-to-toe several times," "performed an improper turn," and "drifted to the left." Linin argues that Neff did not administer any of these tests properly. Following the nine-step walk and turn test, Neff invited Linin to sit on the bumper of the patrol vehicle because Linin was shaking. Linin claims that he was shaking because he "was so scared, just scared out of [his] mind."

Neff then had Linin perform the one-leg-stand test. Neff claims that Linin displayed four clues of impairment, including the fact that Linin continued to shake, "raised his hands, hopped and swayed, [and] was unable to get past a four or five second count without putting his foot down." Linin performed the test on both his injured and uninjured legs. Linin also contests the use of the one-leg-stand test and presents expert testimony that an individual with a leg injury is ineligible to perform the test.

After administering the field sobriety tests, Neff asked Linin to blow into a portable breathalyzer. Linin declined to blow into the device, saying that his ex-wife, a lawyer, had warned him not to use a portable breathalyzer. Instead, Linin stated, "I'd rather take a blood test."

At this point, Neff arrested Linin for DUI, handcuffed him, and placed him in the patrol vehicle. Following the arrest, Neff searched Linin's truck, impounded it, and inventoried its contents. During the inventory search, there were five officers at the scene, several of whom later left to conduct patrols in other areas.

While searching Linin's vehicle, Neff told the other officers, "[Now] that I got a DUI, [UHP administration] may get off my back." Neff also admits that he searched Linin's vehicle to find contraband. Specifically, Neff testified that he was looking for "[a]lcohol, drugs, anything that would be illegal." But there is no evidence that Neff found alcohol or contraband in Linin's truck. Neff did not testify that there was any other purpose for searching the truck.

3

Neff took Linin to the UHP Tooele office where Linin agreed to submit to a blood test. Another officer attempted to obtain a blood sample but was unable to successfully draw Linin's blood. The record does not provide any reason as to why the officer was unable to obtain a blood sample from Linin or why he was not taken to a medical facility to obtain a sample.

After the failed attempt to obtain a blood sample, Neff took Linin to the Tooele County Jail and booked him for DUI and failing to move over for an emergency vehicle. Linin claims that while at the Tooele County Jail, he took a breath test that showed a BAC of 0.00. Linin was released on bail several hours later.

Linin was charged with violations of Utah Code § 41-6A-904(2), failing to move over when approaching an emergency vehicle; Utah Code § 41-6A-502, driving under the influence of alcohol; and Utah Code § 41-6A-1635, obstructed visibility due to a broken window. Linin hired an attorney to represent him on these charges. The charges against Linin were later dismissed.

Linin brought claims under 42 U.S.C. § 1983 against Neff and UHP for (1) false arrest, (2) unlawful search and seizure, and (3) unlawful policy, practice, and/or custom of UHP. The Court dismissed Linin's claims against the UHP on the basis of Eleventh Amendment sovereign immunity. On March 20, 2016, Neff filed a motion for summary judgment claiming that he was entitled to qualified immunity on the remaining claims.

In a Memorandum Decision and Order (ECF No. 67) clarifying its initial ruling on the motion for summary judgment, the court concluded that if Neff had a reasonable suspicion at the time he expanded the scope of the traffic stop and ordered Linin to perform field sobriety tests, then he would be entitled to qualified immunity on both of Linin's § 1983 claims. If he lacked a reasonable suspicion, however, then he is liable on both claims. Thus, the sole issue to be decided at trial is whether Neff had a reasonable suspicion that Linin was under the influence of alcohol.

4

In other words, the jury must determine whether Neff in fact observed indicia of impairment, including the odor of alcohol and bloodshot, glassy eyes, in Linin before he expanded the scope of the stop. The present motions in limine, filed by both parties, address the admissibility of certain evidence at trial.

## LEGAL STANDARD

The Federal Rules of Evidence govern the admissibility of evidence at trial. The court outlines the Rules that will be relevant to deciding the parties' Motions.

### I.    Rule 401

Only relevant evidence is admissible at trial. FED. R. EVID. 402. "Evidence is relevant if it has any tendency to make a fact more or less probable than it would be without the evidence; and the fact is of consequence in determining the action." *Id.* 401(a)–(b).

### II.   Rule 403

"The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." *Id.* 403. District courts have "considerable discretion in performing the Rule 403 balancing test." *United States v. Tan*, 254 F.3d 1204, 1211 (10th Cir. 2001). "However, exclusion of evidence under Rule 403 that is otherwise admissible under the other rules 'is an extraordinary remedy and should be used sparingly.'" *Id.* (citation omitted).

### III.  Rule 404

"Evidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with that trait." FED. R. EVID. 404(a)(1). This includes evidence of a "crime, wrong, or other act." *Id.* 404(b)(1). However, evidence of a crime,

wrong, or other act "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, or lack of accident." *Id.* 404(b)(2). The Tenth Circuit has articulated a four-factor test, which incorporates the standards of Rules 401 and 403, to determine whether evidence is admissible under Rule 404(b)(2). Such evidence is admissible if "(1) the evidence is offered for a proper purpose; (2) the evidence is relevant; (3) the probative value of the evidence is not substantially outweighed by its potential for unfair prejudice; and (4) the district court provides an appropriate limiting instruction upon request." *Chavez v. City of Albuquerque*, 402 F.3d 1039, 1046 (10th Cir. 2005) (citation omitted).

## IV.   Rule 608

Rule 608 allows for the admission of evidence regarding a witness' character for truthfulness or untruthfulness. FED. R. EVID. 608. Evidence of specific instances of conduct may be admissible for this purpose. *Id.* However, such evidence may only be introduced through questioning on cross-examination. *Id.* In other words, a party may not introduce extrinsic evidence of a specific instance of conduct aimed at calling a witness's credibility into question.

## V.   Rule 702

Rule 702 concerns testimony by expert witnesses:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and

> (d) the expert has reliably applied the principles and methods to the facts of the case.

F<small>ED</small>. R. E<small>VID</small>. 702(a)–(d).

## DEFENDANT'S MOTIONS IN LIMINE

### I.     2004 Traffic Stop (ECF No. 99)

Neff moves to allow testimony about a 2004 traffic stop involving Linin. In his deposition, Linin testified that on the day he was pulled over by Neff, he wanted to get through Utah without stopping due to a previous experience with Utah police. In 2004, he and his wife were stopped by police on I-80 west of Salt Lake City. An officer informed them it was because their vehicle's windows were too dark. During the stop, police officers placed Linin in the back seat of their patrol car while they spoke with his wife. They asked him if he had any drugs, alcohol, or weapons. He responded that he did not, and eventually the officers released Linin and his wife without a citation. Linin testified that due to this experience, he stopped in Wyoming just before entering Utah to fill his vehicle with gas because he wanted to get "clear through Utah."

Neff argues that this evidence is admissible under Rule 404(b)(2) because it shows "that [Linin] had a knowledge and motivation to avoid police in Utah." Neff purports to offer this evidence to show that Linin wanted to travel through Utah quickly and without stopping because he believed Utah police would question him about alcohol. Neff argues that this makes his defense—that he had a reasonable suspicion that Linin had been drinking—more probable because Neff would not have been concerned with getting "clear through Utah" if he had not been drinking.

First, the court questions the applicability of Rule 404(b)(2) because the offered evidence is not a "crime, wrong, or act" committed by Linin. Nevertheless, the court concludes that the probative value of this evidence is substantially outweighed by its potential for unfair prejudice

and its potential to mislead the jury. *See* FED. R. EVID. 403.[1] This is because the probative value of the evidence is minimal—a drunk driver would be motivated to avoid all police, not just the police of a certain state. In addition, admitting the evidence could lead jurors to believe that Neff had done something, such as ingesting or possessing drugs or alcohol, to warrant the 2004 stop and the questions about drugs and alcohol. This could unfairly affect the jury's determination about whether Linin was under the influence of alcohol during his encounter with Neff. Because the probative value of the evidence is so low and the evidence presents a substantial risk of unfairly prejudicing the jury, it is excluded.

## II.   Damages Not Disclosed During Discovery (ECF No. 100)

Neff moves to exclude evidence of damages that Linin failed to include in his disclosures under Federal Rule of Civil Procedure 26(a)(1)(A)(iii). Specifically, Neff moves to exclude evidence of attorney's fees incurred in the litigation of the underlying DUI charge and costs related to Linin's mental health treatment as a result of the events giving rise to this case. Linin stipulates to the exclusion of evidence of his mental health treatment and its related costs. But he argues that evidence of attorney's fees should be admitted. Linin contends that even though the fees were not initially disclosed, Neff was on notice as to the amount of damages Linin would be seeking for attorney's fees because Linin stated the amount, $3,000, in his deposition. Linin argues that the omission was therefore harmless.

Federal Rule of Civil Procedure 37(c)(1) provides that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) . . . the party is not allowed to use that

---

[1] Even if Rule 404 were applicable, the Tenth Circuit applies a Rule 403-style balancing test when determining whether evidence is admissible under Rule 404. *See Chavez*, 402 F.3d at 1046 (citation omitted).

information or witness to supply evidence . . . at a trial, unless the failure was substantially justified or is harmless." The Tenth Circuit has enumerated four factors a district court should consider when exercising its discretion to determine whether failure to disclose is harmless: "(1) the prejudice or surprise to the party against whom the testimony is offered; (2) the ability of the party to cure the prejudice; (3) the extent to which introducing such testimony would disrupt the trial; and (4) the moving party's bad faith or willfulness." *Eugene S. v Horizion Blue Cross Blue Shield of N.J.*, 663 F.3d 1124, 1129–30 (10th Cir. 2011) (citation omitted).

Here, there is little to no prejudice or surprise to Neff, as the record indicates that he knew both that Linin would be seeking damages for the attorney's fees stemming from the DUI charge and the amount of these damages. Linin's initial disclosures list attorney's fees for the DUI case as a category of damages. *See* ECF No. 125-2 at 5. And at Linin's deposition, counsel for Neff asked Linin about the amount of the attorney's fees at issue, and Linin responded that he would be seeking $3,000. *See* Linin Dep. (ECF No. 125-1) 69:21–72:8. There is no indication that the introduction of such evidence would disrupt trial, nor is there any indication that Linin acted in bad faith by failing to include the amount in his disclosures. The court will therefore allow evidence regarding attorney's fees stemming from the underlying DUI case.

## III. Prior Complaints against Neff (ECF No. 101)

Neff moves to exclude Linin's Exhibit 16, which includes evidence of administrative complaints and related disciplinary action taken against Neff, as well as evidence of a 2017 on-duty shooting by Neff. Neff argues that these are inadmissible under Rules 404(b), 401, and 403. Linin stipulates to the exclusion of all but the following three incidents:

1. An October 29, 2008 complaint alleging that Neff harassed the complainant when he denied Neff consent to search his trailer;

9

2. A July 13, 2011 complaint alleging that Neff illegally searched the complainant's vehicle; and

3. An August 10, 2011 complaint alleging that Neff did not have probable cause to search the complainant's vehicle.

Linin argues that this narrower list of complaints is offered to "establish motive and intent to lie during Linin's traffic stop." He argues that this evidence shows that Neff "was primarily interested in searching vehicles during traffic stops," and that he therefore had a motive to lie about indicia of impairment so he could search Linin's vehicle.

The court finds this argument unpersuasive. It is unclear how prior complaints about improper vehicle searches make Plaintiff's proffered purpose, that Neff had a motive to lie about indicia of impairment in this instance, more probable. In other words, while Neff apparently offers the evidence for a proper purpose, it is not relevant as to that purpose. Rather, what this evidence does make more probable is that Neff improperly expanded the scope of the Linin traffic stop. If jurors were to hear evidence of the past complaints, they may conclude that Neff simply acted in accordance with his past behavior. This is exactly the kind of character evidence Rule 404(b) is meant to exclude. Any evidence of prior administrative complaints against Neff is therefore excluded.

## IV.   Legality of Traffic Stop (ECF No. 102)

Neff moves to exclude evidence about the legality of the initial traffic stop. Linin stipulates to this exclusion and agrees not to argue that the initial stop was illegal. Both parties agree, however, that Linin may present the facts of the initial stop to provide context.

V.     **Veritas Investigation Report (ECF No. 103)**

The parties stipulate that a report prepared at Neff's request by Veritas Investigative Services, LLC (ECF No. 103-2) may be admitted into evidence.

**PLAINTIFF'S MOTIONS IN LIMINE**

I.     **Field Sobriety Test (ECF No. 105)**

Linin moves to exclude evidence regarding his performance on the field sobriety tests administered by Neff. He first argues that the results of the tests should be excluded on the grounds that evidence obtained due to an unlawful expansion in the scope of Neff's investigation cannot be used to justify the expanded scope after the fact. *See Wong Sun v. U.S.*, 371 U.S. 471, 484 (1963). Second, he argues that the evidence should be excluded under Rule 403 because it would unfairly prejudice and mislead the jury and because it would waste time. He argues that the jury will be unable to differentiate between the results of the field sobriety tests, performed after the expansion of the stop, and the evidence of impairment that Neff had prior to such expansion. He also argues that if the evidence is admitted, the parties will have to spend significant time explaining the tests to the jury and arguing over the efficacy and propriety of the administration of the tests.

The court is unpersuaded by Linin's arguments. The case Linin cites in support of his contention that evidence may not be offered to justify a search (or in this case, expansion of a traffic stop investigation) after the fact, *Wong Sun*, is inapposite. It is true that *Wong Sun* stands for the principle that "a search unlawful at its inception may [not] be validated by what it turns up." *Id.* at 484 (citation omitted). But this exclusionary rule applies only in criminal cases, not § 1983 cases. *See Lingo v. City of Salem*, 832 F.3d 953, 957–59 (9th Cir. 2016) (holding that the exclusionary rule does not apply in § 1983 cases); *Townes v. City of New York*, 176 F.3d 138, 149

11

(2d Cir. 1999) ("[T]he fruit of the poisonous tree doctrine is not available to assist a § 1983 claimant."); *accord. Black v. Wigington*, 811 F.3d 1259, 1268 (11th Cir. 2016); *Wren v. Towe*, 130 F.3d 1154, 1158 (5th Cir. 1997). There is no dispute that the results of the field sobriety tests are relevant to the issue at hand because if Linin failed them, then it is more probable that he displayed indicia of impairment before Neff expanded the scope of the stop. In other words, they would make it more probable that Neff did not fabricate the asserted basis for his reasonable suspicion. The court therefore concludes that the results of the field sobriety tests are relevant.

The court also concludes that the evidence will not prejudice or confuse the jury. Linin is correct that his performance on the field sobriety tests is not direct evidence that Neff had a reasonable suspicion that Linin was impaired. But both parties will have the chance to explain the reasonable suspicion standard to the jury and make their case as to the weight the jury should give the evidence. The court can also issue a limiting instruction if necessary. Further, argument regarding this evidence will not "waste time." Although it may take time for the parties to develop arguments regarding whether the tests were properly administered, this time will not be "wasted," since the results of the tests are highly probative on the issue of Neff's reasonable suspicion. The court concludes that evidence regarding Linin's performance on the field sobriety tests is admissible at trial.

## II.     Refusal to Take Portable Breath Test (ECF No. 106)

Linin moves to exclude evidence of Linin's refusal to take a portable blood test on location after the stop. The arguments he presents are nearly identical to those outlined in the previous section—that the evidence should be excluded as fruit of an unlawful search and that it would confuse the jury. The court rejects these arguments for the same reasons enumerated above. Evidence related to Linin's refusal to take the portable breath test is admissible at trial.

12

### III.     2004 Traffic Stop (ECF No. 107)

Linin moves to exclude evidence of the 2004 traffic stop detailed above. As explained above, evidence of the stop is excluded.

### IV.     Linin's Criminal History (ECF No. 108)

Linin moves to exclude all evidence of his criminal history as improper character evidence under Rule 404(b). Neff seeks to introduce evidence regarding two DUI incidents, a 2002 arrest and conviction in Colorado and a 2003 DUI arrest in Kansas where the charges were ultimately dropped. Linin did not agree to take field sobriety test or a portable breath test in either instance, but rather opted for blood tests each time. Neff argues that this evidence is offered for a proper purpose, namely Linin's knowledge that he could forego a portable breath test and agree to a blood test, his knowledge that more time would pass before the blood test could be administered, thereby allowing his blood-alcohol content to decrease, and his plan to take advantage of these facts. Neff also purports to offer the evidence to show "Linin's knowledge of what happens during a police stop and that fear is unnecessary if he had not been drinking" in order to rebut Linin's claim that he failed the field sobriety test because he was scared of overbearing police officers. Neff argues that these facts are critical to his defense because they explain why no subsequent test confirmed Neff's allegation that he smelled alcohol—Linin had a plan to avoid a chemical test.

Turning to the four-part *Chavez* test, the evidence is offered for a proper purpose: to show Linin's knowledge of blood alcohol testing and a possible plan to avoid a chemical test. The evidence is also relevant because if Linin had a plan to avoid chemical sobriety tests and acted on that plan, then it makes it more probable that he was under the influence of alcohol and that Neff observed indicia of such. It is minimally probative, however, since the court will allow evidence of the field sobriety tests and Linin's refusal to take a portable breath test. And such evidence

13

would cause unfair prejudice to Linin that could not be properly cured by a limiting instruction. Jurors, upon hearing that Neff had been arrested for DUI on two prior occasions, may conclude that he was a habitual drunk driver and was merely acting in accordance with his character on this occasion. Because of evidence's minimal probative value and its substantial risk for unfair prejudice, it is excluded.

## V.     Testimony of Defendant's Expert Steven Winward (ECF No. 109)

Linin moves to exclude testimony or other evidence offered by Defendant's proffered expert Steven Winward ("Winward"). The parties stipulate to the exclusion of such testimony and further agree that Linin will not present evidence of the breath test taken hours after the traffic stop.

## VI.     Linin's Drink with His Son (ECF No. 110)

Linin moves to exclude evidence that he had an alcoholic drink with his son about 48 hours before he was stopped by Neff. He argues that the evidence is irrelevant to determining whether Neff observed indicia of impairment and that testimony regarding the evidence would confuse the jury and waste time. Neff argues that the evidence is probative of whether Neff observed that Linin smelled of alcohol. This is because, Neff argues, "any evidence of Linin drinking, handling, or possessing an alcoholic beverage, such as evidence that he was drinking with his son, could potentially be a source of such an odor." Neff also argues that the evidence is admissible to bring into question Linin's reliability as a witness. Linin told Neff at the time of the stop that he hadn't had a drink in a week, but later testified in his deposition that he had a drink with his son in Atchinson, Kansas, about 48 hours before the stop. Neff does not cite a rule of evidence to support his argument.

The court agrees with Linin that the evidence is not relevant to deciding whether Neff observed indicia of impairment during the stop. Linin's partaking in an alcoholic beverage 48 hours before the stop makes it no more or less probable that Neff observed indicia of impairment. Any signs of impairment undoubtedly would have dissipated in 48 hours' time. Thus, Neff may not offer evidence of Linin's drink with his son to show that Neff observed signs of impairment in Linin.

The court defers until trial a decision on whether the evidence may be used to impeach Linin's reliability as a witness. This is because it is unclear in what context the evidence will be offered, in part because Neff does not explain under which Rule the evidence is admissible or precisely how it will be used to impeach Linin. For example, the evidence likely could not be used to impeach any of Linin's testimony at trial because Linin likely will not testify at trial that his last drink was a week prior to the stop. He already testified in his deposition that his last drink was two days prior. Thus, the incident would not be admissible for the purpose of contradicting Linin's trial testimony. If Neff intends to offer the evidence—together with Linin's statement to Neff during the stop that he had not had a drink for a week—to show that Linin has a character for untruthfulness under Rule 608(b) or that he has a poor memory, then the evidence would be subject to a Rule 403 balancing test. 28 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 6118 (2d ed. 2020). The court would need to weigh the evidence's probative value, as it relates to Linin's character for truthfulness or his ability to recollect the past, against potential prejudice to Linin or confusion to the jury. The court therefore defers until trial a decision on this issue.

## CONCLUSION AND ORDER

The court ORDERS as follows:

1.  Defendant's Motion regarding the 2004 traffic stop (ECF No. 99) is DENIED. The evidence is admissible at trial.

2.  Defendant's Motion regarding damages not calculated in his disclosures (ECF No. 100) is GRANTED IN PART and DENIED IN PART. Evidence relating to Linin's mental health treatment and the costs thereof will be excluded at trial. Evidence relating to Linin's attorney's fees stemming from the DUI case is admissible at trial.

3.  Defendant's Motion regarding administrative complaints against Neff and a shooting by Neff (ECF No. 101) is GRANTED. All evidence of such incidents will be excluded at trial.

4.  Defendant's Motion regarding the legality of the initial traffic stop (ECF No. 102) is GRANTED pursuant to the stipulation of the parties. Linin will not argue that the stop was illegal.

5.  Defendant's Motion regarding the Veritas Investigation Report (ECF No. 103) is GRANTED pursuant to the stipulation of the parties. The Report is admissible at trial.

6.  Plaintiff's Motion regarding Linin's performance on the field sobriety tests (ECF No. 105) is DENIED. The evidence is admissible at trial.

7.  Plaintiff's Motion regarding Linin's refusal to take a portable breath test (ECF No. 106) is DENIED. The evidence is admissible at trial.

8.  Plaintiff's Motion regarding the 2004 traffic stop (ECF No. 107) is GRANTED. The evidence will be excluded at trial.

9.  Plaintiff's Motion regarding Linin's criminal history (ECF No. 108) is GRANTED. All evidence of Linin's previous criminal charges and convictions will be excluded at trial.

10. Plaintiff's Motion regarding Defendant's expert Steven Winward (ECF No. 109) is GRANTED pursuant to the stipulation of the parties. Winward will not testify at trial.

11. Plaintiff's Motion regarding Linin's drink with his son (ECF No. 110) is GRANTED IN PART. Neff may not offer evidence of the incident to show that Neff observed indicia of impairment in Linin at the time of the stop. The court will rule at trial whether the evidence is admissible for some other purpose.

DATED March 18, 2021.

BY THE COURT

Jill N. Parrish
United States District Court Judge